662 A.2d 546

MARVIN LOUIS HAMMOCK, JR., AND LEON WILSON, INFANTS, BY THEIR GUARDIAN AD LITEM, THELMA HAMMOCK, AND MARVIN LOUIS HAMMOCK, SR., INDIVIDUALLY, PLAINTIFFS, v. HOFFMANN–LAROCHE, INC., DEFENDANT–RESPONDENT, AND JOHN DOES 1 THROUGH 20, MARY ROES 1 THROUGH 20, RICHARD D. FOX, M.D., DERMATOLOGY–DERMATOLOGIC SURGERY, P.A., A PROFESSIONAL CORPORATION, DEFENDANTS.

Argued March 14, 1995—Decided August 2, 1995.

*Michael E. Tankersley,* a member of the District of Columbia bar, argued the cause for appellant, Public Citizen, Inc. (*Medvin & Elberg,* attorneys; *Mr. Tankersley* and *Philip S. Elberg,* on the briefs).

*Jeffrey A. Peck* argued the cause for respondent (*Shanley & Fisher,* attorneys; *Mr. Peck* and *William R. Brown, Sr.,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

This case requires us to decide whether the public has a right of access to judicial records and materials filed with the court in civil

litigation. Public Citizen Group, Inc. (Public Citizen), a non-profit organization that advocates safe, affordable and effective drugs, sought access to documents filed with the trial court under a protective order in a pharmaceutical manufacturer products-liability case. After the products-liability case was dismissed on summary judgment, the trial court denied Public Citizen access to the documents and materials filed with the court with respect to predisposition-nondiscovery motions. The Appellate Division remanded the matter to the trial court for redetermination. 269 *N.J.Super.* 289, 635 *A.*2d 533 (1993). On remand, the trial court did not unseal the records and the Appellate Division affirmed in an unpublished opinion.

We granted certification, 139 *N.J.* 288, 654 *A.*2d 469 (1994), to establish a standard for deciding when the public should have access to judicial records in the form of documents, transcripts and legal memoranda with attachments filed with a trial court in support of, or in opposition to, motions in civil litigation. We reverse and remand for redetermination in accordance with the standard established today.

## I.

### A

This case has a protracted procedural history spanning seven years. It began when Thelma Hammock filed a medical malpractice claim against her attending physician, Dr. Jose Fishman, a dermatologist, and a products-liability claim against Hoffman–LaRoche (Roche). Roche manufactured and distributed the drug Accutane after it received Food and Drug Administration (FDA) approval in May 1982. Plaintiff's attending physician prescribed Accutane in May 1986 for the treatment of her severe recalcitrant cystic acne. During her use of the drug, plaintiff became pregnant, and gave birth to a child with severe physical deformities and brain damage.

Plaintiff's theory of products liability was alleged inadequacy of warning to prescribing physicians such as Dr. Fishman. The warning was allegedly inadequate because it did not advise prescribing physicians to obtain blood-pregnancy tests. The medical-malpractice claim against Dr. Fishman was based on negligence in prescribing Accutane during plaintiff's pregnancy.

Plaintiff sought discovery of more than 1,000 documents from Roche pursuant to *Rule* 4:10–1 and –2. Roche resisted, contending that many of the documents sought contained trade secrets and confidential and proprietary information, or were protected from disclosure by the physician-patient privilege.

Roche filed a motion for a protective order pursuant to *Rule* 4:10–3. It submitted affidavits of Doctor George S. Vadnai and Donald Hollander who explained that some of the information sought was essential to the filing with the FDA of an Investigational New Drug (IND) or New Drug Application (NDA) for Accutane. INDs and NDAs are the documents required by the FDA for a pharmaceutical company to obtain approval to market a prescription drug. FDA regulations provide that data contained in an IND or NDA file is not subject to public disclosure. *See* 21 *C.F.R.* § 20.111(d).

On May 18, 1989, the trial court concluded that "good cause" existed under *Rule* 4:10–3(g) justifying the entry of a protective order sealing the documents. The finding of good cause was based on the court's conclusion that many of the documents "may contain trade secrets, confidential and proprietary information and material protected by the physician-patient privilege of persons who are not parties to this action." The protective order controlled the dissemination of Roche documents by providing:

(2) Plaintiffs, their attorneys, or any experts or consultants retained by them, are prohibited from disseminating, in any fashion, manner or method, copies of the documents thereof, to any other person, firm or organization, not directly associated with plaintiffs or upon further written order of this court; * * * (5) All information in whatever form, discovered from examination of said documents shall be used only in connection with this action; * * * (11) If a party objects to the designation by Roche of any documents as containing trade secrets, proprietary or confidential information, the party shall (within 60 days of receipt of such docu-

ments) identify each document it wishes to remove from the provisions of this Order ... Roche shall have the burden of proving that such documents contain trade secrets or other confidential and proprietary information.

Within a month after entry of the May 18 order, the trial court directed Roche to make available to plaintiff's counsel certain transcripts from other lawsuits filed against Roche. The protective order was amended to prohibit plaintiff's counsel from conferring with attorneys in other jurisdictions with respect to Accutane litigation and from disseminating any information obtained in the present litigation.

It is undisputed that counsel for plaintiff and Roche used many of the documents in connection with various motions and briefs filed with the trial court. It was always understood by counsel for the parties that documents attached to motions or references to them in the briefs were subject to the May 18, 1989, protective order as amended.

## B

Roche filed two motions for summary judgment, and counsel for the parties utilized documents placed under seal in support of, and in opposition to, those motions. The trial court denied one motion on June 29, 1990, and thereafter also denied a motion for reconsideration. On February 29, 1991, a different judge granted partial summary judgment to Roche.

After full discovery, Roche again moved for summary judgment seeking dismissal of the products-liability claim on October 25, 1991. By that time, a different trial judge was presiding over the matter. To support its renewed application, Roche relied on testimony of plaintiff's expert and Dr. Fishman, as well as the prescribing information available for Accutane in May 1986. In opposition to the motion, plaintiff submitted hundreds of pages of Roche's documents and deposition transcripts, some of which were referred to in the briefs. Those voluminous submissions included transcripts, confidential marketing information, proprietary business materials and privileged medical information about other

birth defect cases in which Accutane had been ingested during pregnancy.

The trial court conducted oral argument on May 14, 1992. Roche convinced the trial court that in May 1986 its warning informed Dr. Fishman, and other physicians prescribing Accutane, of the drug's potential to cause birth defects through Roche's "Black Box" warning specifically approved by the FDA. The trial court granted summary judgment dismissing the products-liability case based on the learned-intermediary rule codified by *N.J.S.A.* 2A:58C–4. *See Niemiera by Niemiera v. Schneider*, 114 *N.J.* 550, 559, 555 *A.*2d 1112 (1989); *Strumph v. Schering Corp.*, 256 *N.J.Super.* 309, 315, 606 *A.*2d 1140 (App.Div.1992), *rev'd on dissent*, 133 *N.J.* 33, 626 *A.*2d 1090 (1993). Plaintiff then settled with Dr. Fishman. The Appellate Division affirmed the summary judgment, and the Court denied certification. 134 *N.J.* 561, 636 *A.*2d 519 (1993).

## C

Just prior to dismissal of the products liability case, two motions were made by nonparties to intervene, pursuant to *Rule* 4:33–2, and unseal the documents or otherwise modify the protective order as amended. The first of those motions was made on April 7, 1992, by counsel for plaintiffs in two other Accutane lawsuits to obtain pleadings, deposition transcripts and any attached exhibits and documents. The second motion was made on April 16, 1992, by Public Citizen. It generally sought to secure public access to the pleadings, deposition transcripts, documents and exhibits filed with the court and to unseal the records so it could obtain evidence that might shed light on the hazards posed by Accutane. Public Citizen had petitioned the FDA for more stringent regulation of Accutane, and it wanted this information to support that petition.

In June 1992 the trial court determined that counsel for plaintiffs in the two Accutane lawsuits could have access to the Roche documents as well as deposition transcripts. The court required

counsel to be bound by the protective order as amended on July 17, 1992. On the same date the trial court also granted Public Citizen's application to intervene but denied its application to unseal the documents.

The trial court directed Roche to review the documents and specifically *inform the court which documents* Roche believed contained proprietary, trade secret or privileged information. In response, Roche made an application to continue the protective order with respect to approximately 221 documents it identified as falling into either of three protected general categories. At the conclusion of a hearing conducted on November 2, 1992, the trial court found that forty of the 221 documents should be unsealed and the remaining 181 documents should remain under seal.

In Public Citizen's appeal, the Appellate Division held that Public Citizen has no absolute First Amendment or common-law right of access to the documents. 269 *N.J.Super.* at 297, 635 *A.*2d 533. The Appellate Division relied on *Matter of Krynicki,* 983 *F.*2d 74, 78 (7th Cir.1992), in holding that "confidentiality orders entered by other [judges] had to be followed," and that documents under seal submitted to the court in connection with motions that "were irrelevant to the merits of the lawsuit" can be kept secret. *Hammock, supra,* 269 *N.J.Super.* at 298, 635 *A.*2d 533. Because the trial court made no factual findings, either when it entered the protective order on May 18, 1989, or on November 2, 1992, when Roche sought to keep the documents under seal, the Appellate Division remanded the matter for two purposes. First, the remand directed Roche's attorney to designate by categories "the type of documents sought to be protected and the general basis for the protection." *Id.* at 299, 635 *A.*2d 533. Second, it required the trial court to make factual determinations about whether Roche had made "a sufficient factual showing to keep its alleged proprietary and confidential information" under seal. *Id.* at 300, 635 *A.*2d 533.

The trial court conducted a hearing on remand on June 16, 1994. The judge stated that he had for a second time made an *in*

*camera* inspection of each document. During that hearing, counsel for Public Citizen conceded that "in the event that documents were placed into the record solely for the purpose of evading the Protective Order, those materials would not be subject to the presumption of public access." He disagreed, however, that it was bad faith for plaintiff's counsel to submit, in opposition to Roche's first summary judgment motion, documents that had been used successfully to defeat that motion. He argued that the records and documents were used in briefs submitted to a different judge, to create a factual issue with respect to the adequacy of the warning.

The second judge rejected Public Citizen's argument, explaining that when he considered a document to have been submitted in bad faith, it was because of plaintiff's counsel's repeated submissions of the documents in support of an invalid legal theory. The judge perceived the legal theory to be invalid because Roche had informed physicians prescribing Accutane that it could cause defects in a fetus. Plaintiff, nonetheless, insisted that Roche had a duty to inform prescribing physicians of the exact methodology they should use to rule out pregnancy. The judge found that the documents submitted in bad faith were not probative of any relevant issue in the case.

The judge created the following five categories to determine whether the protective order covered the documents:

Category No. 1: Documents Containing Trade Secrets, Results of Proprietary Research, and/or Confidential Marketing Documents

Category No. 2: Proprietary Documents Which Will Adversely Affect Public Safety If They Are Publicly Disseminated

Category No. 3: Transcripts Subject to Confidentiality Orders of Other Courts

Category No. 4: Documents Containing Privileged Medical Information Relating to Third Parties

Category No. 5: Irrelevant Material Filed by Plaintiffs in "Bad Faith"

The trial court unsealed five documents and ordered that 175 documents remain under seal. It appears that the trial court placed eighty-three under Category 1, one under Category 2, twenty-four under Category 3, thirteen under Category 4 and

fifty-four under Category 5. The trial court did not articulate any clear standard for determining whether to unseal documents once the litigation had been concluded.

Following the remand, the Appellate Division affirmed in an unpublished opinion in which it stated that it had "carefully reviewed the subject documents." However, no statement of facts was provided with respect to what was observed from reviewing the documents.

Public Citizen sought certification to establish a standard for deciding whether "court records, including transcripts of open judicial proceedings, legal memoranda and evidence presented in connection with dispositive motions, may be placed under seal without any specific showing of harm to justify the denial of public access."

## II.

A determination of what standard should guide our courts when deciding whether to unseal judicial records filed with the court should begin with our court rules. We emphasize that the records that Public Citizen seeks to review and copy were presented to the trial court during judicial proceedings conducted on Roche's motions for summary judgment.

Two court rules were initially involved in sealing the records. The first is *Rule* 1:2-1 which provides "[a]ll trials, hearings on motions and other applications ... shall be conducted in open court unless otherwise provided by rule or statute. If a proceeding is required to be conducted in open court, no record of any portion thereof shall be sealed by order of the court except for good cause shown." Although the documents presented to the trial court were covered by the protective order, the arguments on the summary judgment motions were conducted in open court. The records of the hearings on the motions were not sealed. Thus, sealed records were used in unsealed hearings on motions.

*Rule* 1:2–1 was amended effective September 1992 to require "good cause" for sealing any portion of a proceeding conducted in open court. The comment to this Rule's recent change is informative. It states:

> As explained by the Civil Practice Committee's 1992 Report, 130 N.J.L.J. Index Page 529, 1 N.J. Lawyer 145 (1992), this amendment was intended to codify present practice and to reject the proposal that sealing be permitted only in extraordinary circumstances. In sum, the Committee recognized the tension between litigants' privacy and strategy rights and an asserted right to know, and the Committee opted, in general terms, for preservation of privacy. See Miller, Confidentiality, Protective Orders and Public Access to the Courts, 105 Harv. L.Rev. 427 (1991). See also [Zukerman] *Zukerman v. Piper Pools,* 256 N.J.Super. 622 [607 *A.2d* 1027] (App.Div.), *certif. den.,* 130 N.J. 394 [614 *A.2d* 617] (1992), reversing an order sealing a recorded infant's settlement on the ground that the prevailing presumption of access had not been overcome. The resulting dichotomy is that a competent adult, whose settlement need not be judicially approved, is free to negotiate a "private" settlement whereas in the case of a minor or incompetent, the requirement of judicial approval of the settlement forecloses, in the ordinary case, the plaintiff's privacy option.
>
> [Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 1:2–1 (1994).]

The second court rule involved is *Rule* 4:10–3 which controls the issuance of protective orders. It provides:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including, but not limited to, one or more of the following:
>
> (a) That the discovery not be had;
>
> (b) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (c) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (d) That certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;
>
> (e) That discovery be conducted with no one present except persons designated by the court;
>
> (f) That a deposition after being sealed be opened only by order of the court;
>
> (g) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;
>
> (h) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.
>
> If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or

permit discovery. The provisions of R. 4:23–1(c) apply to the award of expenses incurred in relation to the motion.

[*R.* 4:10–3.]

For purposes of this case, *Rule* 4:10–3 can be paraphrased to read that for "good cause shown, the court may make an order which justice requires to protect a party" from whom discovery is sought, by ordering that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." *Ibid.* Roche is a party and the entity from which discovery was sought within the meaning of the rule.

There is nothing in the rule that defines "good cause," or an "order which justice requires to protect a party." Recognizing that because all parties to litigation have a duty to engage in proper discovery, *see R.* 4:10–1 and –2, issuance of protective orders should be used sparingly.

Because no rule of civil practice controls unsealing of records, we rely on *Rule* 1:1–2 and the Court's supervisory power to establish an appropriate standard.

## III

### A

The purpose and scope of our discovery rules, *Rule* 4:10–1 and *Rule* 4:10–2, are substantially the same as *Federal Rule of Civil Procedure* 26. Similarly, *Rule* 4:10–3 follows the text of *Federal Rule of Civil Procedure* 26(c). Because of the dearth of decisional law in this State interpreting the right of public access to documents, information and materials submitted to the court in civil matters, we will also examine applicable federal decisions and rules.

We begin by acknowledging that in New Jersey, the right to attend criminal and civil judicial proceedings has been recognized as early as the 17th century in a colonial-era document known as the 1677 Concessions and Agreements of West New Jersey,

referred to in *Richmond Newspapers, Inc. v. Virginia*, 448 *U.S.* 555, 567, 100 *S.Ct.* 2814, 2822, 65 *L.Ed.*2d 973, 983–84 (1980); *Gannett Co. v. DePasquale*, 443 *U.S.* 368, 386 n. 15, 99 *S.Ct.* 2898, 2908 n. 15, 61 *L.Ed.*2d 608, 625 n. 15 (1979) and *Publicker Industries, Inc. v. Cohen*, 733 *F.*2d 1059, 1069 (3d Cir.1984).

When Justice Oliver Wendell Holmes served on the Supreme Judicial Court of Massachusetts, he said that public access to civil judicial proceedings was "of vast importance" because of "the security which publicity gives for the proper administration of justice." *Cowley v. Pulsifer*, 137 *Mass.* 392, 394 (1884). This Court has acknowledged recently that the First Amendment, the history of this State and our rules of court all require that civil trials and judicial proceedings be open to the public unless an important state interest is at stake. *New Jersey Div. of Youth and Family Servs. v. J.B.*, 120 *N.J.* 112, 127, 576 *A.*2d 261 (1990).

### B

Public Citizen claims both a common-law and First Amendment right-of-access to the records. It asserts that a presumption of access exists because the records it seeks were submitted to the Superior Court to assist the court in its decision whether to grant summary judgment dismissing the products-liability claim.

This State has consistently recognized the right of the public to have access to nonjudicial-governmental records. In that context, we recently stated:

> A person seeking access to public records may today consider at least three avenues of approach. He may assert his common law right as a citizen to inspect public records; he may resort to the Right to Know Law, *N.J.S.A.* 47:1A–1 *et seq.*, or, if he is a litigant, he may avail himself of the broad discovery procedures for which our rules of civil practice make ample provision.
>
> [*Atlantic City Convention Ctr. Auth. v. South Jersey Pub. Co., Inc.*, 135 *N.J.* 53, 59, 637 *A.*2d 1261 (1994) (quoting *Irval Realty, Inc. v. Board of Pub. Util. Comm'rs*, 61 *N.J.* 366, 372, 294 *A.*2d 425 (1972)).]

Because Public Citizen was an intervenor, rather than one of the litigants in the underlying litigation, it relies on only one of the three theories mentioned in *Convention Center*.

Leaving aside the difference between the common law and the Right–to–Know–Law definitions of what constitute a nonjudicial-public record, "[u]nder the common law rule of access to public documents, a citizen is entitled to inspect documents of a public nature '. . . provided he shows the requisite interest therein.'" *Nero v. Hyland,* 76 *N.J.* 213, 222, 386 *A.*2d 846 (1978) (quoting *Ferry v. Williams,* 41 *N.J.L.* 332, 334 (Sup.Ct.1879)). This common-law right-of-access is not absolute; it requires a flexible balancing process, focusing on the interests of the parties. *Convention Center, supra,* 135 *N.J.* at 60–61, 637 *A.*2d 1261 (citations omitted). As will be seen later, the common-law right-of-public-access to judicial records filed in civil litigation is less restrictive than the common-law right-to-know with respect to nonjudicial-governmental documents.

## C

*Nixon v. Warner Communications, Inc.,* 435 *U.S.* 589, 597, 98 *S.Ct.* 1306, 1312, 55 *L.Ed.*2d 570, 579 (1978), recognized a common-law right-of-access to records and documents filed with courts. The Court stated:

It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." *In re Caswell,* 18 RI 835, 836, 29 A 259 (1893). Accord, e.g., *C. v C.,* 320 A2d 717, 723, 727 (Del 1974). See also *King v King,* 25 Wyo 275, 168 P 730 (1917). Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, *Park v Detroit Free Press Co,* 72 Mich 560, 568, 40 NW 731, 734–735 (1888); see *Cowley v Pulsifer,* 137 Mass 392, 395 (1884) (per Holmes, J.); *Munzer v Blaisdell,* 268 App Div 9, 11, 48 NYS2d 355, 356 (1944); see also *Sanford v Boston Herald–Traveler Corp.,* 318 Mass 156, 158, 61 NE2d 5, 6 (1945), or as sources of business information that might harm a litigant's competitive standing, see, e.g., *Schmedding v May,* 85 Mich 1, 5–6, 48 NW 201, 202 (1891); *Flexmir, Inc. v. Herman,* 40 A2d 799, 800 (NJ Ch 1945).

It is difficult to distill from relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate. The few

> cases that have recognized such a right do agree that the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. In any event, we need not undertake to delineate precisely the contours of the common-law right, as we assume, arguendo, that it applies to the tapes at issue here. [*Nixon, supra,* 435 *U.S.* at 598–99, 98 *S.Ct.* at 1312–13, 55 *L.Ed.*2d at 580 (footnotes omitted).]

Although *Richmond Newspapers, supra,* 448 *U.S.* at 580–81, 100 *S.Ct.* at 2829–30, 65 *L.Ed.*2d at 992 (holding the First Amendment does not permit the closure of criminal trials to the public without a showing of an overriding governmental interest), *Globe Newspaper Co. v. Superior Court,* 457 *U.S.* 596, 102 *S.Ct.* 2613, 73 *L.Ed.*2d 248 (1982) (holding that the balance between the right of the public to have access to criminal proceedings and the state's interest militating in favor of closure must be made on a case-by-case basis), and *Press–Enterprise Co. v. Superior Court,* 464 *U.S.* 501, 503, 104 *S.Ct.* 819, 820, 78 *L.Ed.*2d 629, 634 (1984) (extending the guarantees in criminal trials to include pretrial proceedings), did not involve civil judicial proceedings, they have been interpreted by some federal courts "to imply a right of public access to civil-court proceedings and to items in the record of such proceedings." *Division of Youth and Family Services, supra,* 120 *N.J.* at 122, 576 *A.*2d 261. *See also State v. Williams,* 93 *N.J.* 39, 459 *A.*2d 641 (1983) (opening pretrial criminal proceedings to the public and the press).

Since *Nixon* was decided in 1978, a substantial number of federal courts have recognized a pervasive common-law right to inspect and copy documents and materials filed with a trial court in connection with nondiscovery-pretrial motions. Those courts recognize that the filing of documents and materials in support of, or in opposition to, pretrial motions gives rise to a rebuttable presumption of public access. *F.T.C. v. Standard Fin. Mgmt. Corp.,* 830 *F.*2d 404, 409 (1st Cir.1987); *Bank of Am. Nat'l Trust & Savs. Ass'n v. Hotel Rittenhouse Assocs.,* 800 *F.*2d 339, 344 (3d Cir.1986); *Matter of Continental Ill. Sec. Litig.,* 732 *F.*2d 1302, 1308 (7th Cir.1984); *In re Knoxville News–Sentinel Co., Inc.,* 723 *F.*2d 470, 476 (6th Cir.1983); *Crystal Grower's Corp. v. Dobbins,*

616 *F*.2d 458, 461 (10th Cir.1980); *In re Agent Orange,* 96 *F.R.D.* 582, 584 (E.D.N.Y.1983). Some state courts have reached the same result. *Davenport v. Garcia,* 834 *S.W.*2d 4, 23–24 (Tex. 1992); *In re Johnson,* 232 Ill.App.3d 1068, 174 Ill.Dec. 209, 213, 598 *N.E.*2d 406, 410 (1992).

Nonetheless, some tension exists among the circuits with respect to whether the presumption of access attaches to all documents filed with the court, or only those that are used or considered relevant. In some respects, the decision whether the court's use of materials provides a basis for access turns on the nature of the motion under consideration by the court and the role of the documents in the resolution of the motion. Richard L. Marcus, *Myth and Reality in Protective Order Litigation,* 69 *Cornell L.Rev.* 1, 46–49 (1983).

Recently, the United States Court of Appeals for the Third Circuit reaffirmed its broadly defined right-of-public-access to judicial records in *Leucadia, Inc. v. Applied Extrusion Tech. Inc.,* 998 *F*.2d 157, 164 (1993). The Court found a "presumptive right of public access to pretrial motions of nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." *Ibid.* Under that holding, the mere *filing* of the documents or materials with the court causes the common-law presumption of public access to attach.

The United States Courts of Appeal for the First and Second Circuits differ, however, from the Third Circuit in their definitions of "court documents." The Second Circuit has concluded that the presumption of public access attaches to only those documents and materials used in the adjudication process. *United States of Am. v. Amodeo,* 44 *F*.3d 141, 145 (1995). The First Circuit limits "court documents" to those filed with the court that are *relevant* to performance of the judicial function. *Anderson v. Cryovac, Inc.,* 805 *F*.2d 1, 12 (1986).

## D

Apart from the common-law presumption of public access to judicial records, Public Citizen also contends it has a First Amend-

ment right that attaches to all documents obtained by parties through discovery in civil litigation. In *Seattle Times Co. v. Rhinehart*, 467 *U.S.* 20, 104 *S.Ct.* 2199, 81 *L.Ed.*2d 17 (1984), the Court addressed the question whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process. There, the Aquarian Foundation, a religious group, and Rhinehart, its spiritual leader, brought a defamation and invasion of privacy claim against the Seattle Times which had published a series of derogatory articles about the group and its leader. *Id.* at 22–23, 104 *S.Ct.* at 2202, 81 *L.Ed.*2d at 20–21. When the defendant Seattle Times sought to discover a list of the Foundation's donors and amounts contributed as well as a list of members, the religious leader moved for a protective order. *Ibid.*

The Court articulated the standard by which to determine whether a protective order that prevented a party to civil litigation from disseminating discovery material in advance of trial violated the First Amendment. The Court held "it is necessary to consider whether the 'practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id.* at 32, 104 *S.Ct.* at 2207, 81 *L.Ed.*2d at 26 (quoting *Procunier v. Martinez*, 416 *U.S.* 396, 413, 94 *S.Ct.* 1800, 1811, 40 *L.Ed.*2d 224, 240 (1974)). Under this standard, *Federal Rule of Civil Procedure* 26(c) was found to further governmental interest because it enabled parties to litigation to obtain discovery to assist in preparation for trial or settlement or both. "The prevention of abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders." *Seattle Times, supra,* 467 *U.S.* at 35–36, 104 *S.Ct.* at 2209, 81 *L.Ed.*2d at 28–29. Hence, the protective order was upheld. Thus, while the parties to civil litigation have a First Amendment right that attaches to discovery information, that

right is not absolute. The First Amendment does not require a court to allow "unrestrained" dissemination of discovery materials.

Public Citizen has argued also that a First Amendment right-of-access to the documents exists because it believes the constitutional protection against imposing a restraint in the form of protective orders is more strict than the common law "good cause" standard codified by *Rule* 4:10–3 as explicated today. But *Seattle Times* did not find a First Amendment right-of-public-access to pretrial discovery documents. The Court stated that "pretrial depositions and interrogatories are not public components of a civil trial. . . . [R]estraints placed on discovered, but yet not admitted, information are not a restriction on a traditionally public source of information." *Seattle Times, supra,* 467 *U.S.* at 33, 104 *S.Ct.* at 2207–08, 81 *L.Ed.*2d at 27. Whether filing pretrial-discovery documents with the trial court in connection with pretrial-nondiscovery motions should be viewed the same as documents placed into evidence in a trial, has not been answered by the United States Supreme Court. We decline to reach the First Amendment right-of-public-access issue. The public right-of-access to the documents that undergirds our decision is based on the common law rather than the text or structure of either the federal or state constitution. The common-law right-of-access to the documents affords Public Citizen an adequate basis, under the standard we adopt today, for the relief it seeks.

■ To recapitulate, the principles distilled from the reported decisions are as follows. There is a presumption of public access to documents and materials filed with a court in connection with civil litigation. That right exists under the common law as to the litigants and the public. Under the First Amendment, however, we do not decide whether that right extends beyond the litigants. But the right of access is not absolute. Under both the common law and the First Amendment, a court may craft a protective order. "[T]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the person who seeks to overcome the presumption of

access to show that the interest in secrecy outweighs the presumption." *Leucadia, supra,* 998 *F.*2d at 165 (quoting *Bank of America, supra,* 800 *F.*2d at 344). Documents containing trade secrets, confidential business information and privileged information may be protected from disclosure. *Nixon, supra,* 435 *U.S.* at 598, 98 *S.Ct.* at 1312, 55 *L.Ed.*2d at 580; *Leucadia, supra,* 998 *F.*2d at 166. Therefore, under this Court's supervisory power and pursuant to *Rule* 1:1–2, we establish a reasonableness standard to determine when the presumption of access may be rebutted.

### III

The standard we adopt has been influenced in part by what other jurisdictions have done. The national trend is away from sealing documents and materials filed with a court. That trend is quite evident in recent decisions in the First, Second and Third Circuits. Moreover, many state courts and legislatures have upheld a broad common-law presumption of public access to court documents, particularly in areas such as health, safety and consumer fraud. *Accord Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 139 *N.J.* 392, 655 *A.*2d 417 (1995).

At least two states have enacted statutes that severely curtail the use of sealing orders. Texas has created a rule that bars the sealing of court documents in most instances, especially those that could affect the "public interest." *Rule* 76a of the Texas Rules of Civil Procedure states that all "court records" are presumptively public and may be sealed only upon a showing that disclosure would damage a specific and serious interest that outweighs the presumption of openness and that no less restrictive means can adequately protect that interest. *Tex.R.Civ.P.* 76a1. "Court record" is defined as "discovery, not filed of record, concerning matters that have a probable adverse effect upon the general public health or safety, or the administration of public office, or the operation of government." *Id.* at 76a2(c) (exempting cases "originally initiated to preserve bona fide trade secrets or other intangible property rights"). A protective order that would limit

access to such documents is allowed only after a public hearing, held with notice, that allows "any person" to participate. *Id.* at 76a3; *see* Lloyd Doggett & Michael S. Mucchetti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest,* 69 *Tex.L.Rev.* 643 (1991).

In 1990 the Florida Legislature enacted legislation that limits the use of confidentiality orders (the same as our protective orders) where "public hazards" are involved. *Fla.Stat.Ann.* § 69.081 (West 1995). "Public hazard" is defined as "an instrumentality, including but not limited to any device, instrument, person, procedure, product, or a condition of a device, instrument, person, procedure or product, that has caused and is likely to cause injury." *Id.* at 69.081(2). It severely limits orders sealing records by forbidding any agreement or contract that "has the purpose or effect of concealing a public hazard" or any information about such a hazard. *Id.* at 69.081(4). Significantly, the act gives any "substantially affected" person standing to contest any order, agreement or contract that violates the statute. *Id.* at 69.081(6).

Other states have enacted more limited statutes. For example, the Commonwealth of Virginia passed a statute in 1989 that requires that courts allow attorneys to share discovered information with attorneys involved in similar or related cases, provided that they secure permission of the court and that the receiving lawyers agree in writing to be bound by any protective order. *Va.Code Ann.* § 8.01–420.01 (Michie 1995). That statute is similar to the supplemental protective order entered in the present case.

New York has a court rule that limits the sealing of court records as part of settlements. The rule urges the court to "consider the interests of the public as well as the interests of the parties." *N.Y.Ct.R.* § 216.1(a). Although the New York rule does not affect the confidentiality of materials in the discovery process, it does require a finding of good cause before a court can grant a request to seal a court file as part of a settlement. *Compare, Rule* 1:2–1 and *Zukerman v. Piper Pools, Inc.,* 256 *N.J.Super.* 622, 607

*A.*2d 1027 (App.Div.) (unsealing records of a settlement in a juvenile case), *certif. denied,* 130 *N.J.* 394, 614 *A.*2d 617 (1992).

In addition, a variety of court rules affecting disclosure of court records have been proposed or adopted in other states, including, but not limited to: Arkansas, California, Colorado, Kentucky, Mississippi, Missouri, New Hampshire, North Carolina, Pennsylvania, South Dakota and Washington. *See* Dorothy J. Clarke, *Court Secrecy and the Food and Drug Administration: A Regulatory Alternative to Restricting Secrecy Orders in Product Liability Litigation Involving FDA–Regulated Products,* 49 *Food & Drug L.J.* 109, 123 n. 87–88 (1994); Richard L. Marcus, *The Discovery Confidentiality Controversy,* 1991 *U.Ill.L.Rev.* 457, 466 n. 56 (1991); Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 *Harv.L.Rev.* 427, 429–30 n. 7 (1991).

In New Jersey, legislation that appears to favor nearly unqualified public access to court documents was introduced by Assemblypersons Mullen and Cohen in the October 1990 legislative session. Assembly Bill No. 3794; Assembly Bill No. 4110. Relying on a broad definition of "public hazard," the proposed legislation encourages access "to members of the public in protecting themselves from injury which may result from [such] public hazard." *Ibid.* The only exception to the presumption was "trade secrets." *Ibid.* The proposed legislation, however, was not enacted into law.

Finally, we acknowledge that Congress has also become concerned with protective orders as evidenced by the introduction of three bills since 1989. Clarke, *supra,* 49 *Food & Drug Cosm. L.J.* at 115 n. 78. Hearings held on those bills included testimony from the husband of a woman who died as the result of a defective heart valve and a consumer injured as a result of the medication Zomax. *Ibid.* The most far-reaching of the bills would have restricted "protective orders in state and federal courts in products liability actions involving products distributed in commerce," while another

bill would have been limited to "public hazards." *Ibid.* The current Congress has not taken any action in this area.

## IV

### A

Independent of the interests of the parties and their attorneys in the litigation that comes before our courts, there is a profound public interest when matters of health, safety and consumer fraud are involved. Prescription drugs involve both health and safety. Therefore, as a matter of public policy there must be careful scrutiny prior to sealing records and documents filed with a court in a high public-interest case. That heightened interest requires that trial courts be more circumspect when deciding whether to seal or unseal records used in litigation.

We are therefore persuaded that we should adopt a broad standing rule affording the public access to court files when health, safety and consumer fraud are involved. Standing should not be limited to the parties or their attorneys. The "applicability and importance of the interests [favoring public access] are not lessened because they are asserted by a private party" that was not a party to the litigation. *Leucadia, supra,* 998 *F.*2d at 167–68. This comports with the spirit, if not the letter, of our civil practice permissive-intervention procedure, *Rule* 4:33–2.

The standard we establish today recognizes that there must continue to be confidentiality of materials submitted in the discovery process. The discovery delivered to a plaintiff's counsel under a protective order is not subject to public access as long as it remains in the private domain of plaintiff's counsel. *Bank of America, supra,* 800 *F.*2d at 343. The same is true with regard to discovery motions. *Leucadia, supra,* 998 *F.*2d at 165. To hold otherwise would be incongruous with the goals of our broad discovery process embodied in *Rule* 4:10–2, intended to effectuate "the public policies of expeditious handling of cases, avoiding stale evidence, and providing uniformity, predictability and security in

the conduct of litigation." *Zaccardi v. Becker*, 88 *N.J.* 245, 252, 440 *A.*2d 1329 (1982); *Cunningham v. Rummel*, 223 *N.J.Super.* 15, 18–19, 537 *A.*2d 1314 (App.Div.1988).

■ Nor do we intend to change our existing public policy of maintaining confidentiality in matters such as certain aspects of divorce proceedings, child-custody disputes, juvenile-justice proceedings, proceedings involving trade secrets or as otherwise provided by law. Those are either private or confidential matters in which the government's interest outweighs the presumption of access.

The standard that we adopt represents a combination of the standards adopted in the First, Second and Third Circuits. The standard we adopt should be followed whether access is sought by a party or a nonparty for the purpose of making available to the public sealed documents and materials filed with the court in connection with nondiscovery applications.

### B

The questions whether to seal or unseal documents are addressed to the trial court's discretion. *Nixon, supra,* 435 *U.S.* at 599, 98 *S.Ct.* at 1312, 55 *L.Ed.*2d at 580. But that discretion must be structured. Although it is difficult to articulate a comprehensive definition of "good cause" required by *Rule* 1:2–1 and *Rule* 4:10–3, the following standard should guide trial courts in deciding applications made pursuant to *Rule* 1:2–1 and *Rule* 4:10–3.

■ First, there is no presumptive right-of-public-access to discovery motions filed with the trial court. Unfettered public access to discovery motions would make the already complicated discovery process more burdensome. *Leucadia, supra,* 998 *F.*2d at 164–65. Discovery motions include, but are not limited to, those to take depositions, to compel production of a witness for deposition, to compel answers to interrogatories or to compel the production of documents. Summary judgment motions, however, cross the threshold requiring a presumption of public access.

Trial courts must take care to prevent the privileges recognized by *Rule* 4:10–2(a) from swallowing the presumption of access.

■ Second, the presumption of public access attaches to pre-trial-nondiscovery motions, whether preliminary or dispositive, and the materials, briefs and documents "filed" with the court in support of, or in opposition to, such motions. The motions with supporting materials and documents, once filed with the court for a decision, become part of the court's file.

■ Third, the presumption attaches to all materials, documents, legal memoranda and other papers "filed" with the court that are relevant to any material issue involved in the underlying litigation (not simply relevant to a particular motion) regardless of whether the trial court relied on them in reaching its decision on the merits. This requirement is consistent with the scope of discovery under *Rule* 4:10–2(a). Here, "relevant" is defined as "having a tendency in reason to prove or disprove any fact of consequence to the determination of the" matter then before the court. *N.J.R.E.* 401.

■ Fourth, the presumption of access applies regardless of whether the nondiscovery motion that caused the documents to be filed with the trial court is granted or denied.

■ Fifth, a flexible balancing process adaptable to different circumstances must be conducted to determine whether the need for secrecy substantially outweighs the presumption of access. The "requirements of confidentiality are greater in some situations than others." *Convention Center, supra,* 135 *N.J.* at 60, 637 *A.*2d 1261 (quoting *McClain v. College Hosp.,* 99 *N.J.* 346, 362, 492 *A.*2d 991 (1985)).

■ Sixth, the person who seeks to overcome the strong presumption of access must establish by a preponderance of the evidence that the interest in secrecy outweighs the presumption. The need for secrecy must be demonstrated with specificity as to *each document.* Broad allegations of harm, unsubstantiated by

specific examples or articulated reasoning, are insufficient. The same is required to satisfy the "good cause" requirement of *Rule* 1:2–1 and *Rule* 4:10–3 as well as the "justice" requirement of *Rule* 4:10–3.

 Seventh, the person with the burden of proof must present evidence to show why public access to the documents should be denied *currently* rather than rely on the fact that a protective order was entered earlier. We reject the Appellate Division's assertion that the trial court on remand had to follow the sealing order of May 18, 1989, as amended. When a person intervenes in a case to inspect and copy documents that have been sealed, a reassessment of whether documents should remain under seal must be based on a *current* justification for privacy.

 Eighth, the trial court, or a master appointed for such purpose pursuant to *Rule* 4:41–1 to –5, must examine *each* document individually and make factual findings with regard to why the *presumption* of *public access* has been *overcome*. Where secrecy is sought based on trade secrets, privileges, proprietary information or the like, the trial court must nonetheless state with particularity the facts, without disclosing the secrets sought to be protected, that currently persuade the court to seal the document or continue it under seal. The need for secrecy should extend no further than necessary to protect the confidentiality. Documents should be redacted when possible, editing out any privileged or confidential subject matter, *South Jersey Pub. Co., Inc. v. New Jersey Expressway Auth.*, 124 *N.J.* 478, 488–89, 591 *A.*2d 921 (1991), so that the protective order will have the least intrusive effect on the public's right-of-access.

We recognize that the standard we establish today will, in some instances, place extra demands on our already over-worked trial courts, but the interest of the public in a case involving health, safety or consumer fraud is well worth the effort.

The standard we adopt today parallels in many respects the existing protection afforded the public in nonjudicial governmental

matters under our common-law right-of-access to materials that are part of the public record as well as under our Right–to–Know Law, *N.J.S.A.* 47:1A–1 to –4. In addition, the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21, affords further protection to the public that is similar to our *Rule* 1:2–1 requirement that court proceedings be open to the public.

## V

 Application of the standard established today leads us to reverse for several reasons.

Even though the trial court reviewed the documents and found that some were protected under the trade secret privilege, it combined the category of trade secrets with proprietary interests, delineating "Documents Containing Trade Secrets, Results of Proprietary Research, and/or Confidential Marketing Documents" as the first category of documents entitled to protection. Confidential information and proprietary information are not entitled to the same level of protection from disclosure as trade secret information. *Littlejohn v. Bic Corp.*, 851 *F.*2d 673, 685 (3d Cir.1988).

While the trial court found that trade secrets fall into a "good cause" classification, Public Citizen nonetheless questions whether documents were properly classified as such. On one end of the spectrum is the true trade secret, the best example being the formula for Coca–Cola. *Coca–Cola Bottling Co., Inc. v. Coca–Cola Co.*, 107 *F.R.D.* 288 (D.Del.1985) (finding "one of the best-kept secrets in the world" because only two people in the company knew the formula, and they were forbidden to fly on the same plane).

The other end of the spectrum is not so easily defined. However, the Third Circuit has been instructive in establishing standards for defining the not-so-obvious trade secrets. For example, in upholding a protective order for trade secrets regarding design, safety and quality test information, but denying a protective order to limit discovery of other accident or claims information for the

Bic butane lighter, that court referred to Comment b of the Restatement of Torts § 757 (1939) which provides:

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.
>
> [*Smith v. Bic Corp.*, 869 *F.*2d 194, 199 (3d Cir.1989) (quoting *Restatement of Torts* § 757 comment b (1939)).]

That court also stated that "information that is in the public domain or which has been 'reverse engineered,'—*i.e.*, garnered by beginning with the finished product and determining the process used to manufacture it—cannot be protected as trade secrets." *Id.* at 199–200. Relying on its prior decision in *SI Handling Systems, Inc. v. Heisley*, 753 *F.*2d 1244, 1256 (1985), the Third Circuit articulated some additional considerations that we find useful:

> (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.
>
> [*Smith, supra,* 869 *F.*2d at 200 (citing Restatement of Torts § 757, comment b (1939)).]

In addition, the trial court created a second category for "Proprietary documents which will adversely affect public safety if they are publicly disseminated." Once again, the record does not reflect why the court created two categories for proprietary interests. Documents that are proprietary must be found compelling in their secrecy interests to overcome the presumption of public access. *Rule* 4:10–3, relied on by the trial court, does not include a proprietary information category. While a justification for sealing trade secrets may be more readily established, it is more difficult to seal proprietary information.

Furthermore, the trial court kept over fifty documents under seal in the "bad faith" category because they were "irrelevant."

First, counsel for Public Citizen was not accorded the same treatment as was counsel for the plaintiffs in the two other Accutane lawsuits. Counsel in those two cases was permitted to examine the documents to assist with preparation for the motion to modify the protective order. In contrast, counsel for Public Citizen was not permitted to see the records. Fundamental fairness would seem to dictate equal treatment unless valid reasons, not articulated, dictated otherwise.

Second, the trial court did not explain why a document was not relevant to any nondiscovery motion or to any material issue raised in the litigation.

Third, Public Citizen argued persuasively on the remand, although not successfully, that it was not bad faith for plaintiff's counsel to present to the second judge hearing Roche's summary judgment motion the same documents that were presented to the first judge who denied Roche's summary judgment motion. Even though the theory of products liability was found to be unsound as a matter of law, we do not discern bad faith in submitting the same documents a second time.

Moreover, the trial court did not explain why the presumption of access, which it recognized, was outweighed by the need for secrecy in regard to particular documents. The few initial attempts were inadequate. For example, the judge said document number one was a letter dated May 19, 1988, that plaintiff had attached to a "March 9, 1989, memorandum of law in support of the Plaintiff's Motion to compel production of documents and in opposition to Roche's Motion for a Protective Order." Roche "asserted that this letter was irrelevant material submitted by plaintiffs in bad faith in the underlying action." The judge found that the letter was "totally irrelevant to this case" because the prescription given to plaintiff "was written in 1986." However, except for the names of the sender and addressee of the letter, the judge did not comment on its content. Without further comment, one such as Public Citizen, which has not seen the letter, has no way of knowing whether the letter contained information that was

relevant to a material issue in the litigation. That shortcoming characterizes the remand proceedings that deprived Public Citizen of proper judicial review.

The point is that the date of the document *alone* is not dispositive of whether good cause exists to overcome the presumption of access. The example discussed above is also illustrative of a document and legal memorandum filed with the trial court to which the presumption of access does not attach if they were submitted in connection with discovery motions only.

We are painfully aware that the trial court has conducted two *in camera* examinations of the documents already to determine whether to unseal the documents. Those examinations, however, were conducted without the benefit of a clear standard to guide the bench and bar. The standard we have adopted recognizes a very strong presumption in favor of public access. It is expected that the standard will make it easier, not harder, for trial courts to make informed decisions respecting whether to seal or unseal judicial records.

Finally, we emphasize that the standard we have adopted applies to the sealing and unsealing of documents required as part of settlement agreements whether deemed to be encompassed by the general provisions of *Rule* 1:2–1 or *Rule* 4:10–3 or both. But if an attorney seeks to obtain documents placed under seal in one litigation for use in other litigation, as occurred in the present case, the trial court can order access to documents and place restraints on the attorney with respect to the way in which the documents might be used. Such an application is in the nature of a motion to intervene to obtain discovery for use in another case.

We conclude that the record on remand is insufficient to permit us to decide whether good cause existed, in accordance with the standard we have adopted, to deny public access to the documents. We therefore reverse the judgment of the Appellate Division. The matter is remanded to the Law Division for redetermination consistent with this opinion.

*For reversal and for remandment* –Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.