691 A.2d 391

IN THE MATTER OF THE TRUST CREATED BY J. SEWARD JOHNSON UNDER AN AGREEMENT DATED OCTOBER 30, 1944, FOR THE BENEFIT OF DIANA JOHNSON FIRESTONE.

Superior Court of New Jersey
Appellate Division

Argued February 18, 1997—Decided April 4, 1997.

416

Before Judges LANDAU, WALLACE and KIMMELMAN.

*Joseph C. Mahon* argued the cause for appellant, Eric B. Ryan (*Hill Wallack*, attorneys; *Mr. Mahon*, on the brief).

*Laurence B. Orloff* argued the cause for respondent, Diana J. Firestone (*Orloff, Lowenbach, Stifelman & Siegel, P.A.*, attorneys; *Mr. Orloff*, of counsel; *Linda S. Moore* and *Craig A. Ollenschleger*, on the brief).

*Mary Lou Parker* argued the cause for respondents, Trustees of Diana J. Firestone 1944 Trust (*Pitney, Hardin, Kipp & Szuch*, attorneys; *James C. Pitney*, on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

The court is called upon to consider whether a party, as a member of the public or as a remote contingent beneficiary of a trust, may have access to private financial and business records of a vested beneficiary which records were provided to the trustees for purposes of facilitating a discretionary distribution of principal

and income and which records were placed before the court in connection with an intermediate accounting and were requested to be sealed by the trustee rather than by the vested beneficiary.

## I

Eric B. Ryan (Ryan) appeals from an order denying him access to documents which were previously sealed by court order during an earlier phase of the administration of the trust in question. The documents relate to records detailing the personal financial affairs of Diana Johnson Firestone (Diana), and her husband Bertram, and were filed in connection with prior intermediate accounting proceedings involving the 1944 Diana M. Johnson Stokes Trust [1] (hereinafter referred to as the "Diana Trust" or the "1944 Diana Trust"). The records were ordered to be sealed as confidential and personal documents.

On October 30, 1944, J. Seward Johnson created six substantially similar trusts, one for each of his six children. Diana was one of the six children. Each trust was principally funded with 15,000 shares of Johnson and Johnson common stock, the current market value of which is substantial. Mary Lea Ryan, sister of Diana and mother of the appellant Eric B. Ryan, was a beneficiary of one of the six similar trusts. She has since deceased. Appellant is a nephew of Diana and a grandson of the grantor, J. Seward Johnson.

The trustees of the Diana Trust were given the right to pay to Diana so much of the net income of the trust as they "in their absolute and uncontrolled discretion . . . deem to be for her best interests." The trustees had the substantially similar right to distribute and pay over to Diana "any or all of the Trust Property[.]" Upon the death of Diana, the trustees were instructed to distribute any remaining Trust Property to her "surviving spouse and issue . . . as she may direct by her Last Will and Testa-

---

[1] Diana was then married to Richard Stokes. She is now married to Bertram R. Firestone.

ment[;]" failing such testamentary direction by Diana, the remaining Trust Property was to be distributed "to her issue in equal shares *per stirpes,* or failing such issue, then" in equal shares to the surviving children of the grantor or *per stirpes,* to the issue of a deceased child of the grantor.

Ryan is an issue of a deceased child of the grantor, J. Seward Johnson, and, thus, is a contingent remainderman of the Diana Trust. The measure of Ryan's contingency must be gauged by the fact that Diana has a living spouse, four children, and three grandchildren born since 1993. Diana certifies that she has executed a Last Will and Testament containing a power of appointment amongst her spouse and issue who survive her. Ryan was born in 1951 and is forty or more years older than any of Diana's present grandchildren. There may be more grandchildren. Ryan bases his interest in the Diana Trust and his claim to view the sealed documents on the possibility that Diana, her husband, her four children, and her three grandchildren will all predecease Ryan and that there will be no further grandchildren born of Diana's children. Should that possibility occur, Ryan would then become a vested remainderman along with any surviving children or other grandchildren of J. Seward Johnson. Diana's actuary certifies that the possibility of this occurring is "*zero*[.]" Ryan's actuary certifies that the possibility "is small but is not zero." Judge Hamlin described Ryan's contingent remainder interest as "attenuated and remote."

The personal financial data at issue was submitted by Diana to the trustees of the Diana Trust in support of her request for a discretionary distribution of trust funds. The same personal material was also provided to the guardian *ad litem* for her infant daughter Alison, who, at the time, was under the age of eighteen years. The trustees filed these personal financial records with the court as part of their request for approval of their intermediate accounting. Diana describes the records as including intimate details regarding the financial affairs of her husband and herself, how they have resolved financial matters in the past, and how they

propose to resolve financial problems, as well as other matters of a most private, confidential, and sensitive nature. She certifies that the information was provided to the trustees with the explicit understanding that it would not be made public. Judge Bachman, who had jurisdiction over the intermediate accounting proceeding, ordered such records to be sealed in accordance with Diana's request.

Prior to the adoption in 1969 of the virtual representation rule, *Rule* 4:26–3, Ryan was made a party to the first intermediate accounting proceeding, by virtue of his contingent interest, filed in 1959 by the trustees of the Diana Trust. Neither Ryan nor any other contingent beneficiary of the Diana Trust had been made a party to trust proceedings subsequent to the adoption of *Rule* 4:26–3. In the 1992 proceedings which resulted in the sealing of the documents in question, in which Ryan was not named as a party, a guardian *ad litem* was appointed to represent the interests of the minor child of Diana "and to represent the interests herein of any person not in being or not presently ascertainable, which may be affected by these proceedings." Accordingly, there was virtual representation of Ryan's contingent future intervention by the guardian *ad litem* in the 1992 proceedings.

In 1961, J. Seward Johnson created the "J.S. Johnson 1961 Charitable Trust" (1961 Trust) from which the income was to be paid to charities until January 10, 1997, with the right of the trustees thereafter to distribute so much of the income to four named children [2] of J. Seward Johnson and to their issue, one of whom is Ryan, "in such shares as the Trustees in their absolute and uncontrolled discretion may deem to be for his or her best interests." The trustees have a similar power to distribute trust property to the same beneficiaries. Upon the termination of the 1961 Trust, the trustees are directed to then divide the trust in

---

[2] For reasons not here germane, J. Seward Johnson sought to disinherit the two children born of his first wife.

equal shares and distribute the same to the children of J. Seward Johnson's four named children or to their issue.

With the approach of January 10, 1997, the trustees of the 1961 Trust initiated litigation of a declaratory nature in which they invited Diana, Ryan, and other remainder beneficiaries to suggest a plan of administration or distribution of the 1961 Trust's principal and interest after January 10, 1997. After several meetings, a family consensus was arrived at but Ryan, and perhaps one or two others, have dissented.

Ryan points out that the 1944 Diana Trust and the 1961 Trust use similar terms such as "best interests" and "absolute and uncontrolled discretion"; the grantor of both trusts is the same; the beneficiaries are substantially the same; and that each trust instrument uses similar language. In consequence, he asserts an interest in reviewing Diana's sealed personal financial information in the hope that it may contain material which is relevant to his interest in the 1961 Trust. Ryan argues that inasmuch as the trustees of the 1961 Trust and the trustees of the 1944 Diana Trust have the same "absolute and uncontrolled discretion" over distribution, he is entitled to gain access to the sealed files as they may be relevant to the position being taken by Diana on the question of what should be done with the 1961 Trust after January 10, 1997. According to Ryan, the sealed documents may have a relevance to his differences with the family consensus as to the ultimate disposition of the 1961 Trust. However, Ryan bases his claim to be given access to the sealed documents both on his status as a member of the public and as a contingent remainderman of the 1944 Diana Trust.

## II

*Hammock by Hammock v. Hoffmann–La Roche, Inc.*, 142 *N.J.* 356, 662 *A.*2d 546 (1995), establishes guidelines to be followed for affording access by the public and interested parties to sealed court records. *Hammock* held that there is a presumption of public access to documents and materials filed with a court

in connection with civil litigation but that the right of access is not absolute. *Id.* at 375, 662 *A.*2d 546. There must be a judicial balancing test to determine whether the need for secrecy substantially outweighs the presumption of access, with the burden placed on the person who seeks to overcome the presumption of access to prove that the interest in secrecy currently outweighs the presumption. *Id.* at 381, 662 *A.*2d 546.

When issues of health, safety, and consumer fraud are involved, the rights of the public to intervene and gain access carry much weight and therefore require diligence by trial courts in balancing the presumption of access against the reasons for maintenance of secrecy. However, issues of health, safety, and consumer fraud are absent from this case and, hence, we reject, as did the court below, Ryan's claim that he is entitled to examine the sealed documents in his capacity as a member of the public pursuant to *Hammock.* Absent presence of such important issues, the general public's right to inspect sealed private documents relating to a person's personal finances is highly suspect. The 1944 Diana Trust was created for the benefit of Diana and her heirs. Essentially, it is a private matter not infected with any meaningful degree of public interest.

## III

Ryan further bases his right to unseal the confidential documents relating to the personal finances of Diana and her husband on his status as a contingent remainderman of the Diana Trust. Because of the multitude of contingencies which must occur before Ryan's interest vests, his status was aptly described as "attenuated and remote." Judge Hamlin ruled:

> It seems improbable that Ryan will survive all seven of Diana's present issue. As time passes and Ryan increases in age and perhaps more children are born to the issue of Diana, that possibility becomes even more remote. One does not have to be proficient in actuarial science to surmise that it is certain that one of Diana's present issue will survive Ryan. Thus, this interest asserted by Ryan in the instant trust only diminishes with time, and in this court's opinion is insufficient to rise to the level which would require any relief sought.

The right to inspect and copy judicial records is not absolute. *Hammock, supra,* 142 *N.J.* at 375, 662 *A.*2d 546. The decision as to access is best left to the sound discretion of the trial judge, a discretion to be exercised in light of the relevant facts and circumstances of the particular case. *Nixon v. Warner Communications, Inc.,* 435 *U.S.* 589, 598–99, 98 *S.Ct.* 1306, 1312, 55 *L. Ed.*2d 570, 580 (1978). *See also Hammock, supra,* 142 *N.J.* at 380, 662 *A.*2d 546. Under *Hammock,* Ryan did not have to overcome a presumption of correctness inherent in the original sealing order entered some years earlier. The burden of proof, measured by the preponderance of the evidence standard, fell upon Diana, the party advocating the preservation of secrecy. *Id.* at 381, 662 *A.*2d 546.

Judge Hamlin did conduct such a balancing test to determine whether the need for secrecy outweighed the presumption of access. He found that Diana had clearly asserted her desire to continue the privacy of her personal financial matters, that present disclosure would adversely affect her business interests and real estate holdings, and that Ryan's concerns did not rise to a level which would permit him to have access in the face of the obvious detriment to Diana.

Ryan's claimed right as an interested party to inspect the sealed records must also fail for reasons beyond his minuscule remainder interest certified by both actuaries. Ryan seeks the records of Diana's finances for use in connection with the pending litigation involving the post January 10, 1997, disposition of the principal and interest of the 1961 Trust. That trust has no legally significant connection or relationship with the 1944 Diana Trust, save for the settlor's identity. The trustees are different. Ultimate disposition of the income and principal of the 1961 trust depend upon a wholly different set of circumstances.

The 1944 Diana Trust was for the sole benefit of Diana. All of the income and corpus, subject to the discretion of the trustees, was for her sole benefit. Only in the unlikely event of Diana's death without surviving issue would Ryan's contingent interest as

a grandchild of J. Seward Johnson vest. The confidential financial information submitted by Diana, in support of her request to invade corpus, was to aid her trustees in the exercise of their discretion. Diana can make no such individual call upon the trustees of the 1961 Trust to the exclusion of other issue of J. Seward Johnson.

Unlike the Diana Trust, the 1961 Trust was not established for the benefit of only one child of J. Seward Johnson. The trustees of the 1961 Trust when considering a distribution of income or corpus must take into account the situation and needs of the four-named children and their issue.

Under these circumstances, *Hammock* affords no special right in Ryan to discover information which is not germane to the 1961 Trust. His interest in the 1944 Diana Trust is clearly remote almost to the point of being theoretical; inspection of Diana's intimate financial records are said to be sensitive to the privacy rights of Diana and her family; the 1944 Diana Trust is unrelated to the 1961 Trust; Diana's personal financial records have no bearing upon the disposition by the trustees income and principal of the 1961 Trust; and Ryan's differences with Diana may be explored, subject to the discretion of the trial judge, using the normal avenues of discovery within the context of the 1961 Trust litigation.

Finally, Ryan urges that he is not bound by the virtual representation provisions of *Rule* 4:26–3. A guardian *ad litem* was appointed in the proceedings in which Diana's confidential financial information was sealed. The sealing was with the consent of the guardian *ad litem*. The wording of the appointment, as above set forth, constituted authority in the guardian to represent persons such as Ryan whose interest was not then ascertainable. The guardian did have access to the sealed information. Ryan argues that there was a built-in conflict of interest in the authority of the guardian since she also represented a child of Diana's who might be disinherited if she objected to Diana's request to invade corpus. Apparently, Ryan's mother adopted

such a tactic with a child who objected to her desire to invade corpus. Such speculation as to Diana's possible reaction is inappropriate. Under these circumstances, the guardian ad litem is presumed to have acted in the best interests of those persons with a presently unascertainable interest. *See R.* 4:26–3(b) and (c).

For the foregoing reasons, the orders under appeal, entered May 21, 1996, and July 8, 1996, are affirmed.