258 N.J. Super. 157 (1992)
609 A.2d 127
JEANNETTE PEPE, PLAINTIFF,
v.
STEPHEN PEPE, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Monmouth County.
Argued May 1, 1992.
Decided May 5, 1992.
*159 Richard M. Eittreim for the Asbury Park Press, Inc. (McCarter & English, attorneys).
Ann Marie Seaton, Deputy Attorney General, for the State (Robert J. Del Tufo, Attorney General, attorney).
MILBERG, A.J.S.C.
In this domestic violence proceeding, the Asbury Park Press, Inc. (hereinafter referred to as the "Press") owner and publisher of the Asbury Park Press, a newspaper of general circulation in Monmouth and Ocean Counties, makes an application to have access to all of the court records on file with the Clerk of the Superior Court.
The two questions presented here have been troublesome to the Family Division and have not heretofore been decided by the courts of New Jersey. The first question is does the confidential provision of N.J.S.A. 2C:25-33 apply to the judicial records kept on file with the Clerk of the Superior Court or is it limited to the statistical records that are required *160 to be maintained by the Administrative Office of the Courts. The second question is whether N.J.S.A. 2C:25-33 is unconstitutional to the extent that it is interpreted as an absolute prohibition against the public's access to public records in domestic violence proceedings.
I hold that N.J.S.A. 2C:25-33 applies to the records kept on file with the Clerk of the Superior Court. I further hold that the confidentiality provision of N.J.S.A. 2C:25-33 is not absolute and therefore is constitutional.
In support of this application for access to the court records the Press argues that it was the intent of the Legislature in using the word confidential to make only the statistical records maintained by the Administrative Office of the Courts confidential and not the records on file with the Clerk of the Superior Court.
R. 1:38 provides in pertinent part as follows:
"All records which are required by statute or rules to be made, maintained or kept on file by any court, office, or official within the judicial branch of government shall be deemed a public record and shall be available for public inspection and copying, as provided by law, except:
* * * * * * * *
(d) Records required by statute or rule to be kept confidential or withheld from indiscriminate public inspection;
(e) Records in any matter which a court has ordered impounded or kept confidential ..."
R. 1:38(d) and (e) restrict the access of the Press to court records where the records are required by statute or rule to be kept confidential or withheld from indiscriminate public inspection or where the court has ordered the record impounded or kept confidential.
N.J.S.A. 2C:25-33 provides as follows:
"The Administrative Office of the Courts shall maintain a uniform record of all requests for orders issued pursuant to sections 9, 10, 12 and 13 of this act. The record shall include the following information:
a. The number of complaints filed in all municipal courts and the Superior Court;
b. The sex of the parties;

*161 c. The relationship of the parties;
d. The relief sought;
e. The nature of the relief granted, including, but not limited to, custody and child support and;
f. The effective date of each order issued.
It shall be the duty of the Director of the Administrative Office of the Courts to compile and report annually to the Governor, the Legislature and the Advisory Council on Domestic Violence on the data tabulated from the records of these orders.
All records maintained pursuant to this act shall be confidential and shall not be made available to any individual or institution except as otherwise provided by law."
In every case involving the application of the statute it is the function of the court to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the facts as it finds them. A clear and unambiguous statute is not open to construction or interpretation. Few statutes can boast such clarity or withstand that test through every inquiry, and the court must take the responsibility of determining in each case presented whether the particular statute, in its application to it, is clear and unambiguous. Watt v. Mayor and Council of Borough of Franklin, 21 N.J. 274, 277, 121 A.2d 499 (1956). In Watt, the Court stated that the need for construction of a statute arises in two instances; when statutes on their face are clear and unequivocal but in light of related legislation and of the surrounding facts and circumstances of the case in which it is applicable, the true meaning becomes indefinite or obscure, or when the meaning of the statute is obviously obscure or doubtful and the language used is per se capable of dual interpretation. When these two circumstances appear, the court is at liberty to interpret the statute but it is the court's solemn duty to seek out and give effect to the legislative intent through the aids available. Id. at 277, 278, 121 A.2d 499.
The court is now called upon to determine the intent of the Legislature in using the word "confidential." In enacting the Prevention of Domestic Violence Act the New Jersey Legislature determined that domestic violence is a serious crime against society and expressed its intent to ensure that the *162 victims of domestic violence have the maximum protection from abuse that the law can provide. N.J.S.A. 2C:25-18. This protection involves protecting victims of domestic violence from possible detrimental effects of revealing to the public allegations or evidence of domestic violence. We all know that victims who have been abused may be terrified by the abuser and reluctant to come forward.
In carrying out its policy of protection and to encourage victims to come forward the Legislature enacted N.J.S.A. 2C:25-26(c) which requires that the victims location remain confidential and not appear on any document or record to which the defendant has access. In enacting N.J.S.A. 2C:25-28 the Legislature provides that the court shall waive any requirements that the complainant's place of residence appear on the complaint. N.J.S.A. 2C:25-28(b).
In advancing the policy of protection, the Legislature provided in N.J.S.A. 2C:25-33 that "all records maintained pursuant to this Act shall be confidential and shall not be made available to any individual or institution except as otherwise provided by law."
The Legislature in drafting the Prevention of the Domestic Violence Act referred to "this section" and not to "this act" when restricting statutory provisions of a particular section. Therefore, if it was the intention of the Legislature to restrict the confidentiality of the records maintained by the Administrative Office of the Courts the phrase "this section", rather than "this act" would have been inserted. In addition, to consider that it was the intention of the Legislature to restrict the word "confidential" to the records maintained by the Administrative Office of the Courts would be illogical because the statistical records are published and delivered to the Governor, Legislature, Advisory Counsel on Domestic Violence and ultimately distributed to the entire judicial system. For the Legislature to restrict access to the compilation of records maintained by the Administrative Office of the Courts but permit access to the *163 records themselves maintained in Office of the Superior Court would be meaningless because the public could prepare such a compilation of the records on file in the Clerk's Office. Accordingly, this court determines that it was the Legislature's intent to classify as confidential, the records maintained in the files of the Superior Court Clerk.
In further support of its application for the right to have access to the court records, the Press argues that the First Amendment requires access to the documents the court maintains in its file.
In support of this argument the plaintiff relies on Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) and Globe Newspaper Co. v. Superior Court, etc., 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), Div. of Youth & Fam. Serv. v. J.B., 120 N.J. 112, 576 A.2d 261 (1990).
In Richmond Newspapers the press and the general public were excluded from attending a murder trial. The United States Supreme Court held that the right to attend criminal trials is implicit in the guarantees of the First Amendment. Id. at 580, 100 S.Ct. at 2829. The Court concluded that an order to close a criminal trial would, therefore, require "an overriding interest articulated in findings." Id. at 581, 100 S.Ct. at 2829. And because no such finding had been made the Court reversed the judgment authorizing the closure of the trial.
In Globe Newspaper Co. a Massachusetts statute excluded the public from trials of sexual offenses involving a victim under the age of 18. The United States Supreme Court held that the nature of the Massachusetts closure rule violated the First Amendment. Id. at 602, 102 S.Ct. at 2617. The Court acknowledged that the right of access to criminal trials is not absolute and that the circumstances under which the press and public can be barred from a criminal trial are limited and the State's justification in denying access must be a weighty one. Id. at 606, 102 S.Ct. at 2619.
*164 J.B. supra at 124, 576 A.2d 261, initiated a removal procedure alleging that the father's mental illness was affecting his parenting ability. The Court affirmed a law division order permitting access to a preliminary hearing while holding that the public's right to access to judicial proceedings is not absolute. The Court decided that if the public's right to attend proceedings is not outweighed by the State's compelling interest in conducting a private hearing there should be access. J.B. involved circumstances where the public's right to attend judicial proceedings was not outweighed by a compelling State interest in conducting a private hearing.
A case by case determination of the need for closure is necessary in order to narrowly tailor the restriction to the governmental interest served. J.B. supra at 124, 576 A.2d 261, citing Globe at 608, 102 S.Ct. at 2621. There is no rule or statute of closure for a domestic violence proceeding. The confidentiality set forth in N.J.S.A. 2C:25-33 is restricted to the records maintained by the Superior Court Clerk. It is conceivable that during a hearing a document in the file of the Superior Court Clerk may be identified and admitted into evidence and then will no longer be cloaked with the confidentiality provision of the statute. Also, in a criminal proceeding charging a violation of a domestic violence order the documents in the file may be used in the proceedings and lose their confidentiality, an event perhaps never considered by the Legislature in drafting the act.
All the cases relied upon by the Press deal with closure of a proceeding and not with denying access to the court file. N.J.S.A. 2C:25-33 denies access only to the court file and not to the proceeding. As with the closure of a proceeding, I find that the confidentiality provision under N.J.S.A. 2C:25-33 is not absolute and that under certain circumstances the court may permit access to that which has been designated confidential by statute. I find that N.J.S.A. 2C:25-33 does not prohibit the court from making a case-by-case determination of the need for *165 disclosure in order to narrowly tailor the confidentiality restrictions to the governmental interest served and therefore the statute is constitutional and does not deny access implicitly guaranteed under the First Amendment. Once an application is made for access to the Clerk's file, the court must decide whether the release of the information will have a detrimental effect on the parties, particularly the victim and if so, whether it outweighs the public's interest of the right-to-know.
The test that the court should employ in determining whether or not a statutorily imposed confidential record should be made public is whether the denial of access is necessitated by a compelling governmental interest. The factors that should be considered are as follows:
1) Will the release of the court documents be detrimental or potentially harmful to the victim?
2) Will adverse publicity be a factor?
3) Will access to court records on a case-by-case basis discourage the victim from coming forward.
In this case the parties were notified of this application for the record and have advised the court that they have no objection to the Press's application and take no position as to what action this court should take. The facts surrounding the alleged act of domestic violence are already a matter of public record. On April 2, 1992 the Press printed a lengthy story relevant to the case and identified the parties. The pending complaint is now public. The names of the parties are now known. The release of the information will not have a detrimental effect on any of the parties, particularly the victim. The parties have elected not to participate and have advised the court that they take no position in this application. Consequently, under the circumstances of this case, the release of the court files will not discourage the victim from coming forward.
I conclude from the facts of this case that the public's interest and the right to know outweighs any compelling governmental interest. Therefore, in this case, the Press is permitted *166 access to the domestic violence records on file in the office of the Clerk of the Superior Court.