862 A.2d 68

ADRIAN TAUB, PLAINTIFF, v. CHARLES
CULLEN, DEFENDANT.

Superior Court of New Jersey
Chancery Division, Family Part,
Warren County

Decided May 20, 2004.

436

*Gayle Sproul*, for applicant for The Morning Call (*Levine, Sullivan, Koch & Schulz*, attorneys).

*Ada H. Carro*, for plaintiff.

Charles Cullen, defendant *pro se.*

*Johnnie W. Mask,* Deputy Public Defender, for defendant.

DILTS, P.J.F.P.

The question presented is whether The Morning Call, a newspaper, should be granted access to the domestic violence file of Charles Cullen, a nurse who is an admitted serial killer. The court grants the application in part and sets forth procedures to be followed to insure the privacy of the victim and the parties' children.

## PROCEDURAL HISTORY

On February 19, 2004, The Morning Call requested leave to intervene in the above-captioned domestic violence matter and requested that the entire domestic violence file be unsealed. Cullen was the defendant in a domestic violence matter filed in 1993, by Ms. Taub, his wife. The final restraining order entered at that time continues in effect. Ms. Taub was not served with the request to intervene until March 30, 2004. The court adjourned the previously scheduled April 1, 2004 hearing in order to give Taub the opportunity to prepare an appropriate response. The hearing was rescheduled for April 15, 2004 at 1:30 p.m. The court, on its own motion, gave notice to the Somerset County Prosecutor and to the Office of the Public Defender in consideration of possible prejudicial effect of release upon criminal prosecution. On April 15, 2004 the court held oral argument with respect to the request by The Morning Call to have access to the underlying domestic violence file. The prosecutor's office took no position. Ada Carro, attorney for Ms. Taub, Charles Cullen, *pro se,* and Johnnie W. Mask, Deputy Public Defender on behalf of Mr. Cullen in the criminal case, objected to release of any documents in the domestic violence file. The court structured a process for consideration of the legal issues raised and directed that a copy of the entire file would be made available to Mr. Mask, Mr. Cullen, and Ms. Carro. They were instructed to write letters setting forth the

basis of their objection to the release of any of the documents contained in the domestic violence file. They were further instructed to send a summary of the letter of objection to Gayle Sproul, Esq., attorney for The Morning Call, deleting from that letter any confidential information. Ms. Sproul was then given the opportunity to respond.

## THE COURT'S DECISION

The starting point for the court's analysis is the Prevention of Domestic Violence Act (the "Act"), *N.J.S.A* 2C:25–17 to – 35, and in particular *N.J.S.A.* 2C:25–33(a) which provides as follows: "All records maintained pursuant to this Act shall be confidential and shall not be made available to any individual or institution except as otherwise provided by law."

The Morning Call bases its request on the "qualified right of access to judicial proceedings" by the press and the public recognized in *Richmond Newspapers, Inc. v. Virginia,* 448 *U.S.* 555, 580, 100 *S.Ct.* 2814, 65 *L.Ed.*2d 973 (1980), and at common law. See also *Nixon v. Warner Communications, Inc.,* 435 *U.S.* 589, 597, 98 *S.Ct.* 1306, 55 *L.Ed.*2d 570 (1978). Essentially, the argument raised is that public understanding and monitoring of the judicial function is critical to the exercise of self-government and to the constitutional right to speak and to publish freely. Further, The Morning Call argues that the New Jersey Supreme Court has also recognized the constitutional right to press access in both civil and criminal proceedings. The leading case relied upon is *New Jersey Division of Youth and Family Services v. J.B.,* 120 *N.J.* 112, 576 *A.*2d 261 (1990). Finally, The Morning Call directs the court's attention to *Pepe v. Pepe,* 258 *N.J.Super.* 157, 163, 609 *A.*2d 127, 130 (Ch.Div.1992) where Judge Milberg held that notwithstanding the mandatory wording of the statute, court records pursuant to the Act could not be automatically sealed. Rather, he held that a case-by-case determination regarding access to the sealed records was required. The court noted a number of situations where documents that might otherwise be

confidential would lose their confidentiality. Further, the court suggested that following factors be considered:

1. Will the release of the court documents be detrimental or potentially harmful to the victim?

2. Will adverse publicity be a factor?

3. Will access to court records on a case-by-case basis discourage this victim from coming forward?

This court would add one additional factor that ought to be considered in its analysis: whether this court's decision will deter others similarly situated from filing actions under the Act for fear of possible disclosure of their records in the future. The court will consider these four factors as it is compelled by the above referenced authorities to deny the position of Mr. Cullen and Ms. Taub to seal all records. The court is required to engage in a detailed review of all documents contained in the domestic violence file in order to decide what should be released.

**1. The process used by the court.** Upon receipt of the letters of objection, the court reviewed those objections, the reply by The Morning Call, and carefully reviewed each and every document in the file. The court has marked eighty-one documents consisting of approximately 400 pages. The court's review showed that the documents were in no special order and that a number of documents were missing pages or lacked attachments. The court wishes to emphasize that it did not remove any documents except as specifically noted in the packets of documents that were given to the parties and The Morning Call. The court redacted all information that would be prejudicial to the children or to Ms. Taub and kept in place all information relating to Mr. Cullen except as expressly noted in the court's handwritten or typed notes that are part of the documents given to the parties and The Morning Call.

**2. Review of factors set forth in *Pepe v. Pepe.*** The first factor considered is whether the release of court documents will be detrimental or potentially harmful to the victim. The answer to this is yes, as any additional release of information has the

potential for being detrimental to Ms. Taub and to the parties' children. The front page of the newspaper on a regular basis contains stories of Mr. Cullen and his admitted murder of hospital patients in New Jersey and Pennsylvania. The release of information in the domestic violence file, if deemed newsworthy by The Morning Call or others, has the potential for redirecting the public focus on Ms. Taub and the parties' children. The basis for the story, however, is the murderous conduct of Mr. Cullen and by no means involves any conduct by Ms. Taub.

The second factor is will adverse publicity be a factor? Adverse publicity will not be a factor from any perspective that this court can envision. Mr. Cullen will be incarcerated for the rest of his life pursuant to the terms of his guilty plea entered on April 29, 2004. Because of his lifetime incarceration, he will not have the opportunity to hurt Ms. Taub. In terms of publicity, Mr. Mask objected to release of the documents, in part, on the basis of possible prejudice and the effect on jury selection during his oral argument on April 15, 2004. The guilty plea on April 29, 2004, however, renders this argument moot.

The third factor set forth in *Pepe v. Pepe, supra,* is: will access to court records on a case-by-case basis discourage this victim from coming forward? Ms. Taub has a final restraining order and it will continue in effect. Mr. Cullen is incarcerated and the court cannot envision any circumstance in which Taub will need further help from the court in terms of the domestic violence matter.

The court adds a fourth factor: whether others similarly situated would be discouraged from filing actions under the Act for fear of possible disclosure of their records in the future. The court concludes that there is always a risk that other victims may be discouraged from coming forward. However, family part judges in the state have taken seriously the confidentiality requirements of *N.J.S.A.* 2C:25–33(a). The newly adopted Domestic Violence Procedures Manual continues to recognize the confidentiality of domestic violence records. There are no reported decisions after *Pepe* that deal with the question of confidentiality of domestic

violence records. This application is an exception because of the murderous conduct by Mr. Cullen that has brought attention to him and all who were part of his life. The Cullen case is one of those rare exceptions where the public interest and the press's right to know outweigh the general expectation of privacy accorded to victims of domestic violence. Moreover, as set forth below, the court believes that by redacting portions of the file that relate to Ms. Taub and the children the court has struck the proper balance that gives The Morning Call that to which it is entitled, but, at the same time, prevents it from receiving that which would be prejudicial to Ms. Taub or the children. The court hopes that future victims will not be deterred and that they will recognize the unique circumstances of this case.

**3. Other factors considered by the court.** First, the court has also considered that many of the items in the domestic violence file are also referenced in the divorce action filed in FM–21–229–93. There is no expectation of privacy with respect to the divorce file. Ms. Taub put into the public domain many items referenced in the domestic violence file by including them in her divorce action. That file was not sealed and has already been released to the press. In December 2003, the divorce file provided a basis for news stories already in the public domain. Second, The Morning Call is correct that the burden of proof shifts to Mr. Cullen and Ms. Taub to demonstrate that there is a compelling need for continued sealing of the files and that there are no adequate alternatives to disclosure. Ms. Taub and Mr. Cullen have failed to meet their burden for most of the information in the domestic violence file. However, some portions have been shown by them to require continued sealing.

Another factor is the argument as to the effect of public release upon the parties' children. The risk of harm to the children by releasing the information contained in these documents is speculative and cannot be quantified. It is clear that Ms. Taub will need to find ways to help the children deal with their father's conduct and the disclosure in the newspaper. The court considers that, as

to the children, there is little if any information that the press would deem newsworthy. The details that are being released as they relate to the children show a conflict with respect to Mr. Cullen's parenting time and child support issues. Such disputes occur on a daily basis in courthouses around the country and are not likely to be deemed newsworthy.

Finally, the court notes that because Mr. Cullen is a serial killer there is a legitimate right of The Morning Call and others to have access to the bulk of this file. The reality is there is legitimate public interest. Moreover, it is likely that there will be interest by psychologists and law enforcement officials in studying Mr. Cullen so as to identify risk factors in the future to prevent or at least to identify at an early stage similar conduct by others. In order to do this, all information should be released except that which is prejudicial to Ms. Taub or the children.

**4. Some documents will be redacted or sealed.** The court spent many hours reviewing the 400 pages contained in the file. The court determined that it was appropriate to delete the names of the children (NOC), Mr. Cullen's accusations with respect to the children or "against" the children (DAAC), the children's psychological information (CPI) and the children's medical information (CMI). As to Ms. Taub, the court has deleted most of defendant's allegations against the plaintiff (DAAP), except to the extent they relate to child support and financial issues and to those matters that either were previously placed in the public domain or were minor or trivial. The court has also sealed plaintiff's identifying information (PII), plaintiff's economic information (PEI) and personal information about the plaintiff (PIAP). The court also deleted defendant's negative allegations against plaintiff's family (DAAPF). This is a small category and involved little information. Most information with regard to Ms. Taub remains as it is not adverse based on defendant's allegations alone.

The court was careful and intentional in preserving in the file all allegations against Mr. Cullen. Whether they are supported or mere allegations has no bearing upon the right of access by the

press. As has been correctly argued by Ms. Sproul, Counsel for The Morning Call, most matters in court files are, of necessity, "allegations" until the ultimate decision by a judge or jury. It is so in the Cullen domestic violence file as well. There was one incident where Ms. Taub made allegations against Mr. Cullen as to his conduct toward a child that the court decided must be sealed. The release of information would have the potential for seriously and permanently affecting the children. More than that cannot be said except that the allegation is only referenced in two relatively small portions of the eighty-one documents and was not a major point or recurring theme in the litigation that continued from 1993 to 1995.

The court wishes to emphasize that some documents appear to be incomplete. The court did not remove any of those documents as part of the review. Each time the court removed documents, the court placed in the documents to be handed to the parties and The Morning Call a statement indicating what was removed. Additional reasons for continued sealing of the record are set forth in typed sheets included in the documents given to the parties and The Morning Call.

**5. Request to intervene.** The court has determined that it is inappropriate to allow The Morning Call to intervene as a party to this matter as such status would give to the newspaper the right to notice in the future and the right to be involved in a way that is inappropriate and unnecessary for the newspaper to achieve its goal of access. The court has considered the merits of the arguments raised by The Morning Call and has granted the newspaper the bulk of that which it sought without according it the status of intervenor.

**6. Procedures to be followed for release of file.** The court is providing its letter opinion to all parties and The Morning Call. On Friday, May 21, 2004, the court will make available to Mr. Cullen, and the parties' counsel a redacted copy of the eighty-one documents. The court will stay its decision with respect to this matter until Wednesday, May 26, 2004. If an appeal is taken, a

further stay should be sought from the Appellate Division as this court does not intend to grant a further stay in the absence of compelling arguments by counsel. In the absence of a stay from the Appellate Division, the court will make available to The Morning Call on May 26, 2004, a redacted copy of the entire file identical to the copy given to the parties on Friday, May 21, 2004. Because of the substantial expense incurred by The Morning Call to pursue this action, the court will withhold further release of this file until Tuesday, June 1, 2004. At that time, the redacted file will be made available to the public and other media for copying at the usual cost per page by contacting the family case manager's office.