**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2265-23
                A-2266-23

IN THE MATTER OF THE
APPLICATION OF JB
NICHOLAS, a/k/a THE FREE
LANCE NEWS, FOR A
JUDGMENT PURSUANT TO
N.J. CT. R. 1:38, GRANTING
PUBLIC ACCESS TO
EVIDENTIARY EXHIBITS
SUBMITTED IN A CRIMINAL
CASE.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HARITON MARACHILIAN,

    Defendant.

_____

IN THE MATTER OF JB
NICHOLAS,

    Appellant.

_____

Submitted November 12, 2025 – Decided February 2, 2026

Before Judges Gilson, Firko, and Vinci.

On appeal from the decision of the Administrative Office of the Courts and from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 24-02-0121.

JB Nicholas, self-represented appellant.

Matthew J. Platkin, Attorney General, attorney for respondent Administrative Office of the Courts (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Elizabeth Merrill, Deputy Attorney General, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent State of New Jersey (Timothy P. Kerrigan, Chief Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

Appellant Jason B. Nicholas is a reporter who publishes an online blog called The Free Lance News. In December 2023, he requested copies of exhibits used at a criminal pretrial detention hearing. He made almost simultaneous requests for the exhibits from the criminal court, where he also moved to intervene, and from the clerk of the court. His motion to intervene in the criminal matter was denied and his request for copies of the exhibits was denied

2

A-2265-23

by the clerk's office on the grounds that the exhibits had been returned to the Prosecutor and the court had not retained copies.

Nicholas now appeals from the trial court's order denying his motion to intervene and a final decision by the Acting Administrative Director of the Courts (the Director). We issue this consolidated opinion to address Nicholas' two appeals.

Because the public has a right to access court records, and because the current record establishes the court still has control over the exhibits, we reverse both the trial court order and the Director's decision. We remand with direction that the clerk's office obtain copies of the exhibits and immediately provide copies to Nicholas. We also provide guidance on how a request for public access should be made and addressed.

## I.

In his blog, Nicholas covers various areas of news, including crime and law. According to Nicholas, he has been "credentialed as a journalist" by the New York City Police Department (NYPD) and the Free Lance News reports extensively on the NYPD.

On December 10, 2023, Hariton Marachilian, an NYPD captain, was arrested in Paterson, New Jersey, and charged with assaulting a woman who was

A-2265-23

also an NYPD captain. The State moved to detain Marachilian pretrial under the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26.

On December 15, 2023, the trial court conducted a hearing. During that hearing, the Prosecutor and defense submitted fifteen exhibits, which were admitted into evidence. Relying on those exhibits, the trial court granted the State's motion and detained Marachilian pretrial.

Several months later, a grand jury indicted Marachilian for first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(13); third-degree criminal restraint, N.J.S.A. 2C:13-2(a); and fourth-degree criminal coercion, N.J.S.A. 2C:13-5(a)(7). He was suspended as an NYPD captain.

Meanwhile, on December 18, 2023, Nicholas sent a letter to the criminal court requesting copies of the exhibits used at the pretrial detention hearing. At approximately the same time, he separately filed a record request with the Passaic County Clerk's Office under Rule 1:38. In his record request, Nicholas sought copies of the exhibits used at the Marachilian pretrial detention hearing, and requested those copies be produced by December 22, 2023.

When Nicholas did not receive a response from the criminal court or the clerk of the court, he moved to intervene in the criminal matter for the limited

4

purpose of obtaining copies of the exhibits. The trial court directed the Prosecutor and defense counsel to submit briefs addressing Nicholas' motion. In responding briefs, both the Prosecutor and defense counsel opposed Nicholas' application.

On March 25, 2024, the trial court heard oral arguments on Nicholas' motion to intervene. Prior to the argument, Nicholas went to the clerk's office and requested the exhibits. Nicholas was informed that the clerk's office did not have copies of the exhibits. Later that same day, the clerk's office sent Nicholas an email, stating in part: "We do not have access to any exhibits and cannot provide that information."

After hearing oral argument on the motion to intervene, the trial court denied it. The following day, the court issued an order and written opinion memorializing its ruling.

In explaining its ruling on the record, the court reviewed the various procedures Nicholas had pursued and was pursuing. The court noted that Nicholas had first sent the court a letter seeking the exhibits, then filed a records request with the clerk of the court, and shortly after moved to intervene. The trial court pointed out that Nicholas had an avenue of access under Rule 1:38. The trial court also noted Nicholas had not exhausted his remedies under that

5

rule because he still could appeal the clerk's office's denial to the Director. Ultimately, the trial court concluded that Nicholas' proper avenue of access was through Rule 1:38.

In its written opinion, the trial court focused on the rules governing intervention. Nicholas had cited and relied on Rule 4:33-1, governing intervention as of right, and Rule 4:33-2, governing permissive intervention. The trial court pointed out that those rules applied to civil matters and do not apply in criminal matters. The court also reasoned that there was no analogous rule, statute, or case law allowing intervention in criminal cases. Accordingly, the trial court denied Nicholas' motion to intervene for lack of standing.

Additionally, the trial court reasoned that Nicholas' motion for the evidence exhibits was "not ripe" for review. The court reasoned Nicholas still had a right to appeal the clerk office's denial of access to the Director. And if the Director denied access, Nicholas could appeal to the Appellate Division. Thus, the trial court also denied Nicholas' motion to intervene on jurisdictional grounds.

In making its rulings, the trial court noted that neither the Prosecutor nor defense counsel had requested the pretrial detention hearing to be sealed. The

court also pointed out that it had not addressed whether any of the exhibits submitted at the pretrial detention hearing contained confidential information.

On March 25, 2025, Nicholas separately administratively appealed the clerk office's denial to the Director. In pursuing that avenue, Nicholas relied on Rule 1:38.

The following day, on March 26, 2024, the Director issued a letter denying Nicholas' administrative appeal. The Director's letter stated, in relevant part:

> The documents you are requesting are not Judiciary records. Pursuant to Rule 1:2-3 ("Exhibits"), evidentiary exhibits submitted to the court in connection with a case are returned to the offering party, unless otherwise ordered by the court. The exhibits offered in connection with this matter were returned to the Passaic County Prosecutor's Office. A request for those exhibits should be made directly to [the] Passaic County Prosecutor's Office, as the Judiciary has returned the exhibits in accordance with Rule 1:2-3. Thus, your appeal is denied.

II.

Nicholas filed two separate appeals: one from the trial court's March 26, 2024 order denying his motion to intervene; and one from the Director's March 26, 2024 final decision denying his request for access to the exhibits. Nicholas argues that the court rules grant public access to court records and he is entitled to review and copy the evidentiary exhibits. He contends that he had a separate

First Amendment right of access and was also entitled to contemporaneously access the exhibits by moving to intervene in the criminal matter for the limited purpose of obtaining copies of the exhibits.

The court rules and the First Amendment both grant the public the right to access judicial proceedings and to copy court records. While the right is subject to certain limitations to protect confidential information or sealed records, the Marachilian pretrial detention hearing was not sealed. Moreover, the record in this matter contains no analysis of whether any of the exhibits used at that pretrial hearing contained confidential information. Accordingly, we reverse both the court's order and the final decision of the Director.

III.

Initially, we address a jurisdictional issue related to Nicholas' appeal of the final decision by the Director. We requested the parties to address this issue. We now hold that we have jurisdiction to hear appeals from a final decision by the Director denying access to court records under Rule 1:38. Our jurisdiction is clear under Rule 1:38-10(b) and Rule 2:2-3(a)(2).

Rule 1:38-10(b) states, in relevant part, that "[a]n appeal from the decision of the Administrative Director shall be filed in the Appellate Division in accordance with R[ule] 2:2-3(a)(2)." R. 1:38-10(b). Rule 2:2-3(a) explains that

8

"appeals may be taken to the Appellate Division as of right . . . to review final decisions or actions of any state administrative agency or officer . . . ."  R. 2:2-3(a)(2).

Given that both those rules were implemented by the New Jersey Supreme Court, the rules should be read in harmony and, therefore, when the Director makes a final decision under Rule 1:38-10(b), he is acting as an "officer" within the meaning of Rule 2:2-3(a)(2).  Moreover, that interpretation is consistent with Rule 1:33-3, which defines the Director's general responsibilities.

IV.

New Jersey has a long tradition of allowing access to judicial proceedings and court records.  See, e.g., Hammock v. Hoffman-LaRoche, Inc., 142 N.J. 356, 370 (1995); see also Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 307, 316 (App. Div. 2006) (explaining that "[t]he First Amendment of the United States Constitution also guarantees the public and the press their right of access to both civil and criminal trials").

A person seeking access to public records can pursue several avenues, including (1) the common law right of access, (2) the First Amendment right of access, and (3) statutory or rule-based rights under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and Rule 1:38 of the New Jersey Court Rules.

9

See Hammock, 142 N.J. at 370 (noting there are at least three avenues for seeking access to public records); State v. F.E.D., 251 N.J. 505, 536-37 (2022) (identifying Rule 1:38 as having an "open access" policy entitling the public to review and copy non-sealed records); Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 143 (2022) (explaining dual paths of right of access under the common law and OPRA).

As we have explained: "[t]he public has a common-law right of access to judicial proceedings and a right to inspect judicial records." Lederman, 385 N.J. Super. at 315 (citing Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1066 (3d Cir. 1984)). "This right applies to civil as well as criminal proceedings." Ibid. (citing N.J. Div. of Youth & Fam. Servs. v. J.B., 120 N.J. 112, 122 (1990)).

We have also explained the reasons for open access:

> The presumption of openness to court proceedings requires more than a passing nod. Open access is the lens through which the public views our government institutions. It is essential to foster public confidence in the judiciary. Access to the court advances "the [F]irst [A]mendment's core purpose of assuring freedom of communication on matters relating to the functioning of government."
>
> [Lederman, 385 N.J. Super. at 323 (quoting J.B., 120 N.J. at 122-23) (citations and internal quotation marks omitted).]

10

The presumption of public access "attaches to all materials . . . that are relevant to any material issue involved in the underlying litigation." Hammock, 142 N.J. at 381. Accordingly, exceptions to open access are "narrowly construed." R. 1:38-1; In re T.I.C.-C., 470 N.J. Super. 596, 607 (App. Div. 2022).

Exceptions include recognized confidential information, like certain domestic violence information, see R. 1:38-3(c)(12) and -3(d), (9) and (12), or sealed records, see R. 1:38-11 (explaining the procedures for sealing records). The burden, however, is on the person or entity seeking to prevent access to justify the need for confidentiality. Hammock, 142 N.J. at 375-76; R. 1:38-11(a) (stating a court record may only be sealed "for good cause" and that party "shall bear the burden of proving by a preponderance of the evidence that good cause exists" for sealing the record).

When access is limited, it should be done in a constrained manner through redactions or editing, if possible. Hammock, 142 N.J. at 382 (explaining that "[d]ocuments should be redacted when possible, editing out any . . . confidential subject matter," to "have the least intrusive effect on the public's right-of-access"). Furthermore, access is to be granted expeditiously. See Gray Media Grp., Inc. v. Loveridge, 155 F.4th 330, 334 (4th Cir. 2025) (explaining that

"[w]hen the right arises under the First Amendment, each day that passes without disclosure could constitute a separate and cognizable infringement"); R. 1:38; N.J.S.A. 47:1A-3(b) (providing "information concerning a criminal investigation shall be made available to the public within [twenty-four] hours" of a request for that information).

Nicholas used two avenues in seeking access to the pretrial detention exhibits. He requested copies of the exhibits from the clerk's office under Rule 1:38, and he filed a motion to intervene in the criminal matter for the limited purpose of getting copies of the exhibits.

A.    The Request for Access Under Rule 1:38.

Rule 1:38 reflects New Jersey's common law public right of access. The rule provides that court records, which are "within the custody and control of the judiciary are open for public inspection and copying except as otherwise provided in this rule." R. 1:38-1. The rule goes on to explain that "[e]xceptions enumerated in this rule shall be narrowly construed in order to implement the policy of open access to records of the judiciary." Ibid.

The rule then broadly defines court records to include "any information maintained by a court in any form in connection with a case or judicial proceeding, including[,] but not limited to pleadings, motions, briefs and their

12

respective attachments, evidentiary exhibits, indices, calendars, dockets, and aggregate data maintained or created by the judiciary for the purpose of statistics." R. 1:38-2(a)(1). Thus, exhibits used in court are expressly included in the definition of a court record. Ibid.

The "public" that is granted access to court records is also broadly construed. Accordingly, "the [] term 'public' refers to individuals, citizens, the press, commercial entities, and persons representing various interest groups. They equally share an unqualified right to inspect and copy court records that are 'required' by law to be disclosed." Report of the Supreme Court Special Committee on Public Access to Court Records § 2.1.2 (2007). The rule was specifically intended to encompass disclosure of documents to the press. Ibid.

Restrictions on access under the rule must be "narrowly tailor[ed]" to serve the government's countervailing interest in protecting confidential information. See Pepe v. Pepe, 258 N.J. Super. 157, 164 (App. Div. 1994). In that regard, the New Jersey Supreme Court has explained: "A case-by-case determination of the need for closure is necessary in order to narrowly tailor the restriction to the governmental interest served." J.B., 120 N.J. at 124.

13

In response to Nicholas' request for copies of the exhibits, the clerk and Director both reasoned that the exhibits were not court records because they had been returned to the Prosecutor. We reject that position for several reasons.

The Director cited Rule 1:2-3, which discusses the return of evidence to the party that offered the evidence at the judicial proceeding. Rule 1:2-3, however, is discretionary and generally applies "[f]ollowing the conclusion of trial." The rule states:

> The verbatim record of the proceedings shall include references to all exhibits and, as to each, the offering party, a short description of the exhibit stated by the offering party or the court, and the marking directed by the court. Following the conclusion of trial, evidence shall be returned to the proponent and so acknowledged on the record unless the court otherwise orders. The record shall note any exhibits retained by the court. All evidence shall be preserved pending direct appeal and proceedings on certification, and shall be made available for inclusion by any party in the record on appeal.
>
> [R. 1:2-3.]

Appellate courts interpret the Rules of Court de novo. Mortg. Grader, Inc. v. Ward & Olivo, L.L.P., 225 N.J. 423, 435 (2016). Thus, we owe no deference to the Director's decision. "When interpreting court rules, we ordinarily apply cannons of statutory construction [and] . . . , as with a statute, the analysis must

14

begin with the plain language of the rule." Wiese v. Dedhia, 188 N.J. 587, 592 (2006).

There is nothing in Rule 1:2-3 to suggest that even if the court returns exhibits, those exhibits are no longer court records. Indeed, reading the plain language of the rule and noting its history, the rule gives the court the discretion to retain or return exhibits but expressly provides that the exhibits will remain available through the end of the appeal process.

We therefore construe Rule 1:2-3 in harmony with Rule 1:38. Given that the language in Rule 1:2-3 is permissive and allows the court to retain the exhibits, we hold that Rule 1:2-3 allows the court to retain control over evidentiary exhibits and, therefore, get them back when there is a request for access under Rule 1:38. In other words, the court still has control over those exhibits and can direct that they be returned to the court at least through the exhaustion of time to appeal.

We harmonize the rules in this way to avoid creating a loophole in the strong policy favoring public access to court records. While the record in this case does not suggest anyone acted inappropriately, it is foreseeable that Rule 1:2-3 could be misused to get around Rule 1:38. For example, a party could use

exhibits in judicial proceedings and then request that the exhibits be returned to that party to deny the public access to the exhibits.

The second reason we reject the Director's position is that the record in this matter does not establish that all the exhibits used at the pretrial hearing were returned. Nor does the record establish when they were returned.

The hearing took place on December 15, 2023. Nicholas made his first request for access three days later, on December 18, 2023. Neither the trial court, nor the clerk, nor the Director identified when and how the exhibits were returned to the Prosecutor.

We also note that the Director references the return of the exhibits to "the Passaic County Prosecutor's Office." There is no reference to the return of exhibits used by defense counsel. Nevertheless, Nicholas requested exhibits used by both the prosecutor and defense counsel.[1]

More to the point, even if the exhibits had been returned within three days, all those exhibits were still under the control of the court. As we have just explained, even if exhibits are returned under Rule 1:2-3, the court continues to

---

[1] We note, Nicholas did not request medical records that were entered into evidence recognizing they were confidential. See R. 1:38-3(a)(2).

A-2265-23

have control over those court records and can direct that the exhibits be returned to the court.

We therefore reverse the Director's denial of Nicholas' request for public access to the evidentiary exhibits. We remand with directions that Nicholas be given immediate access to those exhibits. Both the clerk's office and the court have the authority to direct the Prosecutor to return those exhibits.

As already noted, the pretrial hearing was not sealed. To the extent that the Prosecutor's Office contends that any of the exhibits are confidential or protected as domestic violence information, the Prosecutor will have to make that showing on an expedited basis. The Prosecutor will also have to use good faith in complying with the well-established law that documents should be produced with redactions and those redactions should be limited to protecting the victim of the alleged domestic violence.

B.     The Request to Intervene in the Criminal Proceeding.

The trial court engaged in a thoughtful analysis of Nicholas' motion to intervene. The court appropriately considered the avenue available to Nicholas through Rule 1:38. The court did not, however, recognize that Nicholas had a separate and distinct right to gain access to the exhibits through the court.

Federal courts have recognized that the public, including the press, has a First Amendment right to access court records. See Gray, 155 F.4th at 339 (explaining the First Amendment right of access extends to judicial records); Associated Press, Inc. v. U.S. Dist. Ct., 705 F.2d 1143, 1145 (9th Cir. 1989) (granting access to pretrial documents); In re Time Inc., 182 F.3d 270, 271 (4th Cir. 1999) (allowing access to pretrial motion documents in a criminal case). New Jersey has similarly recognized that First Amendment right. See Lederman, 385 N.J. Super. at 316 (explaining that "[t]he First Amendment of the United States Constitution also guarantees the public and the press their right of access to both civil and criminal trials").

Moreover, no rule or case law states that one avenue needs to be pursued before the other. Indeed, as we have summarized, the New Jersey Supreme Court has stated that both these avenues, as well as other avenues, are available and, therefore, open to being pursued simultaneously. See, e.g., Hammock, 42 N.J. at 370.

Nevertheless, we agree with the logic of the trial court's reasoning that in the normal course a member of the public seeking access to court records should start with a records request under Rule 1:38, which should be made to the relevant clerk's office. The case law addressing First Amendment access,

however, emphasizes that a response to a records request should be made expeditiously. As in this case, evidentiary exhibits filed with the court may be worthy of public attention through news media, and to be relevant, those records should be made available as soon as possible. Accordingly, we do not foreclose motions to intervene for the limited purpose of obtaining court records.

Consequently, the trial court should have allowed Nicholas to intervene for the limited purpose of obtaining copies of the exhibits used at the pretrial detention hearing. By the time the court heard that motion in March 2024, Nicholas had been waiting more than three months to gain access to the court records. The court should have facilitated his access by directing the exhibits to be returned to the court and then making them available to Nicholas as a member of the public. Importantly, the court could also limit Nicholas' intervention. It would have been appropriate to accord Nicholas temporary and limited intervention merely for the right to obtain copies of the exhibits.

In this matter, we note that time has already waned. Nicholas was entitled to receive the records as soon as possible but that did not happen. We trust that the Administrative Office of the Courts will implement policies to ensure timely production of court records.

19

Given our direction that Nicholas is to be given access to the records under Rule 1:38, Nicholas no longer needs to intervene in the criminal action. If, however, the Prosecutor's Office seeks a determination on the confidentiality of any of the exhibits, the court will need to address that issue on an expedited basis.

We reverse both the trial court's March 26, 2024 order and the March 26, 2024 final decision of the Director denying Nicholas access to the exhibits. We remand with direction that Nicholas be given immediate access to the exhibits.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division