**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0106-24

INTERNATIONAL
LONGSHOREMEN'S
ASSOCIATION,

     Plaintiff-Respondent,

v.

THE PORT AUTHORITY OF
NEW YORK AND NEW
JERSEY,

     Defendant-Appellant.

_____

         Submitted December 1, 2025 – Decided December 5, 2025

         Before Judges Sabatino and Walcott-Henderson.

         On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4241-23.

         Port Authority Law Department, attorneys for appellant (Andres J. Castillo, of counsel and on the briefs).

         Mazzola Mardon, PC, attorneys for respondent (John P. Sheridan and Brian A. Jasinski, on the brief).

PER CURIAM

This case concerns a labor union's efforts under the Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 to -13, to obtain copies of marine terminal leases between the Port Authority of New York and New Jersey ("the Port Authority") and certain lessees. The Port Authority is resisting full disclosure of the leases, arguing that redacted portions contain protected trade secrets whose release would be contrary to the public interest.

After examining the allegedly privileged documents in camera, the trial court ordered the Port Authority to release the requested documents, except for very limited redactions to protect bank account information and security concerns. The Port Authority appeals that determination. At our request, we have been supplied, ex parte, with the unredacted versions of the documents to assist us in evaluating the trial court's decision.

We affirm in part, specifically as to the limited redactions approved by the trial court. As to the rest of the proposed redactions, we remand for the trial court to reconsider its ruling and issue a decision that expressly considers each of the six disclosure factors set forth in Hammock by Hammock v. Hoffmann-Laroche, 142 N.J. 356 (1995) and Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609 (1988).

A-0106-24

Because we are remanding this matter, we need not describe the litigation in comprehensive detail. The following summary will suffice for present purposes.

In December 2022, Global Container Terminals ("GCT"), a marine terminal tenant of the Port Authority that occupied terminal space in Bayonne, New Jersey and Staten Island, New York, announced its sale to another entity, CMA CGM. As part of the acquisition, the Port Authority Board of Commissioners held a meeting to approve assignment of the marine terminal leases between it and various GCT subsidiaries to CMA CGM and its own subsidiary, PLUSA.

According to the meeting minutes, the Board agreed to assign the leases and modify certain provisions by supplement. Specifically, the modifications included:

> increases of rents based on container throughput (subject to a minimum annual guarantee); assumption by [CMA CGM] of full responsibility for wharf and berth maintenance, rehabilitation, and replacement obligations; participation of the Port Authority in demurrage revenues; commitment by [CMA CGM] to improve the leasehold to meet increased capacity needs over the [l]ease term: commitment by [CMA CGM] to the Port Authority's sustainability goals (including achieving Net Zero greenhouse gas emissions by 2050); commitment to the Port Authority's contracting goals

3

for minority-owned and woman-owned business enterprises and participation by locally-owned businesses; and improved collaboration with respect to Port Authority priorities relating to safety and security, innovation, customer experience, key performance indicators, and enhanced reporting on terminal activities.

In approximately August or September 2023, CMA CGM completed its acquisition of GCT and the amended lease agreements were assigned to CMA CGM.

Plaintiff, the International Longshoremen's Association, (the "ILA"), an international labor union that represents longshore and other related workers, requested that the Port Authority provide "true copies of all current lease agreement(s) between the Port Authority and CMA CGM, including all attachments, exhibits and supporting documents" pursuant to the New York Freedom of Information Law, N.Y. Pub. Off. Law §§ 84-90 (Consol. 2025)[1] and OPRA. The Port Authority denied the request, asserting the documents were "exempt from disclosure" due to "[i]mpairment of present or imminent contract awards."

In December 2023, the ILA filed in the Law Division a two-count complaint, which alleged the Port Authority violated OPRA and ILA's common

---

[1] We have not been asked on appeal to construe and apply the New York statute.

law right of access. Among other things, the ILA argued: (1) the Port Authority was a "public agency" under OPRA's definition; (2) any agreement "between the Port Authority and CMA CGM [were] government records that should be readily accessible to the public;" (3) "the Port Authority has no legitimate interest in maintaining the confidentiality of [the] documents;" and (4) "[t]he terms and conditions of the lease agreement(s) impact thousands of ILA members who are employed at the two container terminals in Bayonne . . . and Staten Island."

Two months later, the Port Authority filed an answer denying all of the ILA's contentions. Efforts by the parties ensued to try to resolve the dispute.

In April 2024, the Port Authority provided redacted versions of the supplemental agreements for both the Bayonne and Staten Island terminals assigned to CMA CGM. Certain portions of the supplemental agreements were heavily redacted. The Port Authority asserted that the "[r]edactions were made for personal identifying information and proprietary trade secret confidential information."

Given the extent of the redactions, the ILA moved to have the trial court "compel[] the disclosure of unredacted copies of all current lease agreement(s) between the Port Authority and CMA CGM" and for attorney's fees and costs. The motion was supported by a certification of ILA's counsel. The certification

asserted that certain redacted portions "are not considered 'trade secrets' or 'personal identifying information' . . . [w]hen compared to several of the Port Authority's unredacted, publicly-available lease agreements with other marine terminal operators."

In response, the Chief Executive Officer of PLUSA filed an affidavit, in which he stated the agreements contained "trade secret[s and] confidential and proprietary business information" including "unique and innovative fee structures not currently found in other [Port Authority] leases, PLUSA's ownership structure, and terms relating to development commitments, capital investments, and terminal capacity that reflect PLUSA's confidential growth strategy, among other . . . proprietary information . . . which, if disclosed, would cause substantial injury to PLUSA's competitive position." He further explained the alleged proprietary information had been acquired "from PLUSA and affiliate's research, analysis, business modeling, and engineering efforts to create lease terms designed to support and facilitate PLUSA's competitive position within the market. The [p]roprietary [i]nformation is not public information and PLUSA has zealously maintained its secrecy to maintain its competitive advantage over other marine terminal operators."

6

A-0106-24

After hearing oral argument, the trial court issued an oral decision, in which it concluded the matter required in camera review of the unredacted leases. The court noted "[a]ll public agencies operating in New Jersey are subject to the requirements of the OPRA statute, including the Port Authority." With respect to the substantive issues, however, the court reserved its decision until it could review the unredacted agreements in camera and ordered the Port Authority to generate a privilege log to explain which privilege applied to each redaction.

Following its in camera review, the court entered an oral decision on August 30, 2024 and memorialized its opinion thereafter in a conforming order. The court concluded that "redactions purported [by the Port Authority] to be for the protection . . . [of] 'trade secrets' are improper . . . [as those] redactions [were], on the balance, simply transactional details consisting of the how, when, to whom, and how much of the payments will be made from party to party."

The court further declared that "[p]ublic contracts are public documents and the terms contained therein should be made available to the public upon a valid request," including "the identities of the parties, the individuals and entities who comprise the board's ownership of the said corporate entities, the total amount of any contract and the length of the term thereof."

A-0106-24

Even so, the court approved certain very limited redactions. With respect to Port Authority's concern about divulging financial identifiers, the court ruled that "redactions of the bank account number and the banking ADA number . . . are proper . . . under N.J.S.A. 47:1(a)-1.1 [as] dissemination . . . could result in financial harm, fraud, et cetera, to the parties involved . . . and provides little . . . information that would enhance the public's ability to know . . . where the money is going and how the money is being spent."

The court also approved redactions based on security concerns. It ruled that those "redactions contain graphical depictions of the port facilities. Dissemination of same could reasonably constitute a security risk, particularly to a port facility."

Lastly, the court denied an award of counsel fees to the ILA because there "were good faith discussions" and "good faith reasons for withholding or for seeking clarification on some of these redactions."

The Port Authority filed the present appeal. It argues the trial court erred in its application of OPRA and the relevant legal factors that govern the assessment of whether documents contain trade secrets or protected proprietary information. The ILA urges that we affirm the trial court's decision, although it does not contest the redactions of bank account and security-risk information.

A-0106-24

As noted in our introduction, we requested, sua sponte, that the Port Authority furnish us, ex parte, with an unredacted set of the documents for comparative purposes. The documents are approximately 130 pages long.

"Whether an OPRA exemption applies is a question of law subject to de novo review." Bozzi v. City of Jersey City, 248 N.J. 274, 282-83 (2021); see also Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 55 (2022) (noting we review legal questions, including the interpretation of statutes such as OPRA, de novo). Nonetheless, we do not disturb a trial judge's factual findings in an OPRA case if they are supported by adequate, substantial, and credible evidence. N. Jersey Media Grp., Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 295 (App. Div. 2017).

OPRA exempts disclosure of government records relating to "trade secrets and proprietary commercial or financial information" and "information which, if disclosed, would give an advantage to competitors or bidders." N.J.S.A. 47:1A–1.1. Although OPRA does not define a trade secret, we have noted that a trade secret "'may consist of any . . . compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" Commc'ns Workers of Am. v.

A-0106-24

Rousseau, 417 N.J. Super. 341, 361 (App. Div. 2010) (quoting Restatement of Torts § 757 cmt. b (1939)).

To determine whether trade secret protection is warranted, our courts have generally utilized the multi-part test set forth by our Supreme Court in Ciavatta, 110 N.J. at 637, evaluating the following factors:

> (1) the extent to which the information is known outside of the [owner's] business; (2) the extent to which it is known by employees and others involved in the [owner's] business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the [owner] and to [his] competitors; (5) the amount of effort or money expended [by the owner] in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

The Court reiterated those six factors in Hammock, 142 N.J. at 384 (quoting Smith v. BIC Corp., 869 F.2d 194, 200 (3d Cir. 1989)).

Although the Ciavatta/Hammock factors were mainly designed for civil discovery and commercial litigants, those factors logically should be applied in the present setting, in which the Port Authority is acting as a lessor to private companies leasing the marine terminal facilities. Undoubtedly, a significant overlay of the present context is the Port Authority's status as a public agency,

A-0106-24

and the general importance of transparency and accountability reflected in the OPRA statutory scheme.

We appreciate the trial court's general impressions of the proposed redactions and its observation that the redacted portions are "simply transactional details consisting of the how, when, to whom, and how much of the payments will be made from party to party." Nonetheless, the trial court's opinion does not explain why it believed the disclosure risks detailed in the CEO's affidavit are invalid or outweighed.

Although we are mindful of the additional burden it will entail, we must remand the matter for the trial court to: (1) evaluate the CEO's affidavit, explicitly considering the merit of the possible disclosure risks detailed therein; and (2) specifically apply and further explain how each of the six Ciaviata/Hammond factors favors or disfavors the proposed redactions. As part of that undertaking, the trial court is free to reconsider any particular redactions it rejected and to modify its ruling accordingly. We intimate no views on the appropriate outcome.

The remand shall be completed within sixty days of this opinion. After the result has been announced by the trial court (with appropriate ex parte

11

sealing to preserve the right of appeal), either party has forty-five days to pursue a new appeal if it so chooses.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12

A-0106-24